Every v. Town of Easton, et al.      CV-04-174-JD  01/06/05

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Robert Every

    v.                                    Civil No. 04-174-JD
                                       Opinion No. 2005 DNH 003
Town of Easton *et al.*

O R D E R

The defendants, the town of Easton, New Hampshire and three of its selectmen, have moved to dismiss Robert Every's complaint on the ground that it fails to state a claim on which relief can be granted. Every, who filed the complaint pro se, has filed an objection to the motion through counsel.

Standard of Review

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) is one of limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Accordingly, the court must take the factual averments contained in the complaint as true, "indulging every reasonable inference helpful to the plaintiff's cause." Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, 958 F.2d 15, 17 (1st Cir. 1992); see also Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 16 (1st Cir. 1989). In the end, the court may grant a motion to

dismiss under Rule 12(b)(6) "'only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory.'"  Garita, 958 F.2d at 17 (quoting Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990)).

## Background

The following salient facts are set out in Every's complaint and its accompanying exhibits.[1]  During the time of the events at issue, Every was the Easton Chief of Police, and defendants Robert Craven, Keith Kidder, and Robert Thibeault comprised the town's Board of Selectmen ("the Board").  In August 1997, Every refused to carry out the Board's instructions to execute a court order mandating the removal of certain improvements from property in the town on the stated basis that the task at issue was the bailiwick of the sheriff's department.  The Board then failed to issue prompt payment to Every for his work for the period between April 1, 1997, and June 30, 1997.  Following a September 28, 1997, letter from Every threatening to bring the matter to the attention of state labor authorities, however, it appears that

---

[1]In ruling on a motion to dismiss under Rule 12(b)(6), the court may consider documents attached to the complaint without transforming the motion into a motion for summary judgment.  See 2 James Wm. Moore et al., Moore's Federal Practice § 12.34[2], at 12-69—12-70 (3d ed. 2004).

the Board paid him for the work in question.

In early 2002, Every notified the Board of his intention to step down as chief. In an April 21, 2003, letter to the Board, Every mentioned that he had sustained frostbite in his toes while responding to an accident nearly ten years prior. The letter stated that "[t]he condition is work related and if treatment is needed there should be some process to ensure its availability before I retire." After "injuring [his] toes" responding to another call on April 23, 2003, Every requested a workers' compensation claim form, but the Board provided him with the wrong one, which Every nevertheless completed. Thibeault later discussed the claim with his own employer's human resources department and altered the form Every had filled out. The Board subsequently sent a letter to the town's workers' compensation carrier enclosing the altered form and expressing the conclusion that "these injuries are not recordable as qualifying for Workers' Compensation. Nevertheless, as Chief Every's de facto employer, we feel obliged to forward his claim to you."

In addition to these actions, Every charges the Board with unduly delaying the submission of the claim, failing to "have the Notice of Compliance posted," and lacking "procedures [or] even an employee manual to follow." He also alleges that the Board "illegally carried [him] as an independent contractor,"

3

presumably to evade any workers' compensation obligations. Purporting to act pursuant to New Hampshire's Right-to-Know Law, Every later served the Board with a request for information regarding his claim. The Board eventually produced copies of the relevant minutes, but "ignor[ed] the bulk of the request."

Every also alleges making two reports to the Board in his official capacity which it failed to place in its records. One of these reports alerted the Board that an Easton resident had added on to his home without a permit approximately five years earlier. Following the next Board meeting, Craven notified Every that the Board had considered the report but decided not to act on it. The report, however, was mentioned neither in the agenda nor the minutes of the meeting in question.

After the Board later took a number of actions in response to the complaint of another citizen (and former Board member) about construction noise and an illegal structure on a different parcel, however, Every appeared at a Board meeting with a copy of his original report. Two of the Board members said they had not previously seen the document and the secretary stated that it did not appear in the Board records. Every later e-mailed the secretary asking her to note these facts in the minutes of that meeting. Craven told the secretary not to accede to this request because, among other reasons, the matter of the correctness of

4

the minutes could be taken up only at the next Board meeting. Every appeared at that session, where his request was granted.

Every contends that "the citizens of Easton, the Easton Police Department, and the plaintiff have been treated unlawfully, deceptively, and in a manner that elevated [the defendants'] personal priorities over both their oath of office and the common welfare of Easton's taxpayers." He asserts abridgments of his rights to due process and equal protection under the federal constitution and violations of 18 U.S.C. §§ 241 and 242. He also claims that the defendants tampered with public records in contravention of Revised Statutes Annotated ("RSA") 641:7. To right these wrongs, Every requests that the court order the defendants to make $25,000 in charitable contributions, and to pay his costs and attorneys' fees in bringing this suit.

Discussion

The defendants seek dismissal of Every's complaint on the grounds that (1) in failing to allege that the defendants deprived him of any liberty or property interest, or that their conduct otherwise shocked the conscience, Every has not stated a claim for abridgment of his right to due process, (2) he has failed to allege any equal protection violation, (3) he has failed to pursue his state-law remedies under the Right-to-Know

5

and Workers' Compensation statutes, and (4) the criminal statutes he invokes, 18 U.S.C. §§ 241 and 242 and RSA 641:7, provide no private right of action. Every's objection, prepared by his attorney, ignores most of these arguments in favor of reminding the court of general principles of pleading, e.g., "the purpose of a Complaint is to put the Defendants on notice of Plaintiff's claims." Such platitudes do nothing to assist in the court in determining whether Every's complaint states a cause of action.

Every's objection does not clarify whether his due process claim encompasses procedural due process, substantive due process, or both, but it is clear that his complaint properly states a violation of neither. "The threshold issue in a procedural due process action is whether the plaintiff had a constitutionally protected property interest at stake. If [he] did, the State could not deprive [him] of this property without due process of law under the Fourteenth Amendment." Mard v. Town of Amherst, 350 F.3d 184, 188-89 (1st Cir. 2003) (internal citations omitted).

"To be sure, the Constitution affords due process protections to public employees who possess property interests in continued public employment." Galloza v. Foy, 389 F.3d 26, 33 (1st Cir. 2004). Even assuming that Every had a property interest in his continued tenure as police chief, however, his

6

complaint does not allege that the defendants deprived him of this interest.  Although his objection states that the defendants "in violation of state law terminated the Chief for improper reason [*sic*]," Every's complaint and its attachments make clear that he was not in fact terminated--he retired.  Furthermore, there is no suggestion that the retirement amounted to a constructive discharge, i.e., that the defendants intentionally caused "a change in [Every's] working conditions so difficult or unpleasant as to force him to resign."  Pedro-Cos v. Contreras, 976 F.2d 83, 85 (1st Cir. 1992) (quotation marks omitted).  Indeed, the exhibits submitted with the complaint establish that Every sought to step down of his own volition due to his age.  Every's inability to allege that the defendants deprived him of any constitutionally protected property interest is fatal to any procedural due process claim.[2]

This shortcoming also undermines any substantive due process claim Every intends to assert.  Absent the infringement of a protected property or liberty interest, a substantive due process

---

[2]Although the complaint alleges that the defendants delayed in remitting part of Every's wages on one occasion in late 1997, this "deprivation" does not rise to the level of a constitutional violation and, in any event, is barred by New Hampshire's three-year statute of limitations, as the defendants point out.  See, e.g., Truax v. City of Portsmouth, 2001 DNH 116, 2001 WL 716120, at *23 (D.N.H. June 18, 2001).

7

claim can succeed only in the presence of conscience-shocking conduct. E.g., Rosenfeld v. Egy, 346 F.3d 11, 15 (1st Cir. 2003). Every argues that the defendants' actions, "considered in their aggregate, clearly rise to the egregious, unacceptable, outrageous, and conscience-shocking standard required." The court disagrees. Although the conscience-shocking standard has not been precisely defined, certain guidelines have evolved to direct the analysis. Cummings v. McIntire, 271 F.3d 341, 344 (1st Cir. 2001). "Courts have held that the acts must be such as to offend even hardened sensibilities, uncivilized and intolerable, offensive to human dignity, or must constitute force that is brutal, inhumane, or vicious." Id. (internal citations and quotation marks omitted).

The alleged actions of the defendants do not approach this standard. Every complains that the Board disregarded his advice on police business, sometimes to the point of failing to place his reports in the Board's records, and processed his workers' compensation claim and right-to-know request in violation of state law. The First Circuit has repeatedly held, however, that mere misuse or disregard of state law by public officials does not amount to an abrogation of due process. See, e.g., Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortgage Fin. Corp., 246 F.3d 1, 7 (1st Cir. 2001) ("the Supreme Court itself has been

8

chary about invoking the 'shock the conscience' test, lest all policymaking at the state level become routine grist for substantive due process litigation in the federal courts"); Malachowski v. City of Keene, 787 F.2d 704, 708 (1st Cir. 1986). Accordingly, Every's complaint fails to state a claim for the violation of his right to substantive due process.

Every also fails to state any equal protection claim. To proceed on such a theory, a plaintiff must allege that "'compared with others similarly situated, [he] was selectively treated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" Barrington, 246 F.3d at 7 (quoting Rubinovitz v. Rogato, 60 F.3d 906, 909-10 (1st Cir. 1995)). The complaint's only reference to the defendants' treatment of Every compared to that of any other person is its allegation that the Board failed to act in response to his report of an illegal structure in the town but vigorously took up another citizen's complaints of a similar violation on a different parcel.

Every does not allege, however, that the variance in the Board's responses to the two scenarios was born of the requisite "impermissible considerations." Nor does he claim that the Board's contrasting actions were motivated by its "malicious or

bad faith intent" to injure him.  Indeed, Every affirmatively states that the other complaining citizen had "every right to seek redress of grievance and the select board, given the situation, should have acted on it--I fault no one for that."

To proceed on an equal protection claim based on the defendants' improper motive, a plaintiff must allege "egregious procedural irregularities or abuse of power."  PFZ Props., Inc. v. Rodriguez, 928 F.2d 28, 32 (1st Cir. 1991).  The facts set out in Every's complaint plainly do not satisfy this standard.  See, e.g., Hendricks v. Bald, 2002 DNH 60, 2002 WL 385013, at *4 (D.N.H. Mar. 12, 2002) (dismissing equal protection claim based on defendants' failure to respond to plaintiffs' complaints of illegal activity on neighboring property).

In response to the defendants' argument that their alleged violations of state criminal statutes do not entitle Every to any relief, he asserts that "it is unconscionable that a criminal act that carries no civil penalties accruing to the aggrieved would disallow their use in proving violations of both civil rights and federal statutory claims for damages and attorneys [sic] fees."[3] The court takes this statement to mean that Every does not intend

---

[3]To the extent Every intends to assert independent claims under 18 U.S.C. §§ 241 and 242, he cannot do so.  See Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989) ("These statutes do not give rise to a civil action for damages.")

10

to assert a claim against the defendants under RSA 641:7 independent of his due process and equal protection claims, but wants to treat the alleged violation of the state criminal statute as giving rise to a claim under federal law. Every also argues that, despite whatever state-law rights he may have under the New Hampshire workers' compensation and right-to-know statutes, "[t]he remedies are not exclusive and cannot fully redress [him] in this matter."

"It is not enough simply to give . . . state law claims constitutional labels such as 'due process' or 'equal protection' in order to raise a substantial federal question under section 1983." PFZ Props., 928 F.2d at 33 (internal quotation marks omitted). Thus, even if the court were to read Every's complaint as alleging actionable violations of the various state statutes he invokes, and his exhaustion of the various administrative remedies they provide, any such claims would sound in state, not federal, law. Because Every has failed to assert any viable cause of action under federal law, the court declines to exercise supplemental jurisdiction over any state law claims he may have pled. See Lares Group, II v. Tobin, 221 F.3d 41, 45 (1st Cir. 2000); Newman v. Burgin, 930 F.2d 955, 963 (1st Cir. 1991).

11

## Conclusion

For the foregoing reasons, the defendants' motion to dismiss (document no. 4) is granted. The court notes that Every's motion "to file an Amended Complaint should any portion of his Complaint be found inadequate by this Court, within thirty days of the Court's order" was granted with the defendants' assent on September 7, 2004. Every's counsel is reminded that any amended complaint he elects to file must comply with the strictures of Fed. R. Civ. P. 11, keeping in mind the well-established principles of civil rights law articulated in this order.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

January 6, 2005

cc: Mark T. Broth, Esquire
    Kenneth E. Charbuck, Esquire