# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3945

_____

United States of America,                    *
                                             *
          Appellant,                       *
                                             *
     v.                                   *  Appeal from the United States District
                                             *  Court for the Northern District of Iowa
Leland Duane Young,                          *
                                             *
          Appellee.                        *

_____

Submitted:  May 10, 2000

Filed:  August 22, 2000

_____

Before BOWMAN, FLOYD R. GIBSON,[1] and LOKEN, Circuit Judges.

_____

BOWMAN, Circuit Judge.

     The United States appeals the District Court's order suppressing an inculpatory affidavit signed by Leland Young after he was charged with federal drug trafficking crimes.  See United States v. Young, 73 F. Supp. 2d 1014 (N.D. Iowa 1999).  We reverse.

_____

     [1]Complications from an automobile accident have prevented Judge Gibson from reviewing this opinion prior to its being filed.  The opinion is consistent with Judge Gibson's vote at conference.

## I.

On July 16, 1998, the government filed an indictment charging Leland Young and two other persons with one count each of conspiracy to distribute and possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1) (1994). Young also was charged with two counts of using a communication facility in furtherance of a drug trafficking crime in violation of 21 U.S.C. § 843(b) (1994).

Prior to trial, the government and Young entered into plea negotiations. On October 1, 1998, Young, his attorney, the assistant United States attorney (AUSA), and the District Court took part in a conference call.[2] During the call, Young advised the court that he would be pleading guilty according to the terms set forth in a plea agreement. In exchange for his guilty plea, the government promised not to seek a sentencing enhancement that could have doubled Young's mandatory sentence. The government further agreed to enter into factual stipulations, beneficial to Young, regarding the quantity of drugs attributable to him. Finally, the parties agreed that the defendants would execute affidavits in which they admitted each element of the crimes charged. In exchange for the affidavits, Young and his co-defendants would be allowed to remain free on bond pending the plea and sentencing hearing. Young executed the affidavit and signed the plea agreement on October 5, 1998. A combined plea and sentencing hearing was scheduled for January 21, 1999. One day before that hearing, arrest warrants were issued for Young and his two co-defendants for absconding from pre-trial supervision. Young was arrested on May 7, 1999, in Omaha, Nebraska, and transferred back to the Northern District of Iowa for trial.[3] Upon his

[2]Young's two co-defendants and their attorneys also participated in the conference call.

[3]Young's co-defendants remain at large.

return to Iowa, Young retained new counsel and the court set a trial date of October 26, 1999.

On June 17, 1999, and again on October 19, 1999, the government informed Young's counsel that it intended to introduce at the upcoming trial the affidavit Young had executed in exchange for the right to remain free on bond. Young filed a motion in limine on October 22, 1999, seeking to suppress the affidavit. In his supporting memorandum, Young claimed that Federal Rule of Criminal Procedure 11(e)(6)[4] and Federal Rule of Evidence 410[5] rendered the affidavit inadmissible because it was a statement made during the course of plea negotiations. The government resisted Young's motion, arguing that Young had waived the protections of Rule 11(e)(6) and Rule 410.

The District Court held a hearing on Young's motion on October 25, 1999, and issued its ruling granting the motion on October 29, 1999. The court stated in its order that "the Affidavit at issue here is unquestionably a 'statement made in the course of

---

[4]Federal Rule of Criminal Procedure 11(e)(6) provides:

[E]vidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:
    (A) a plea of guilty which was later withdrawn;
    (B) a plea of nolo contendere;
    (C) any statement made in the course of any proceedings under this rule regarding either of the foregoing pleas; or
    (D) any statement made in the course of plea discussions with an attorney for the government which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.

[5]Federal Rule of Evidence 410 is substantively similar to Rule 11(e)(6), with only minor differences not pertinent to our discussion.

plea discussions.'" Young, 73 F. Supp. 2d at 1017 (quoting the rules). Further, the court found no evidence "that Young was aware of the nature of his rights with regard to plea statements" and so ruled that Young did not knowingly waive his Rule 11(e)(6) and Rule 410 protections. Id. at 1025. The government filed this interlocutory appeal challenging the District Court's suppression of the affidavit.

## II.

### A.

The government's first contention on appeal is that the District Court erred in determining that the protections afforded defendants by the plea-statement rules apply to the affidavit in question. As a mixed question of law and fact, we ordinarily review de novo a district court's determination that a statement was given in the course of plea negotiations. See United States v. Morgan, 91 F.3d 1193, 1195 (8th Cir. 1996), cert. denied, 519 U.S. 1118 (1997). But because the government did not raise the issue in the District Court, we review only for plain error. Cf. United States v. Clayton, 210 F.3d 841, 843 (8th Cir. 2000) (reviewing Fourth Amendment challenge for plain error where claim was not raised below); Fed. R. Crim. P. 52(b). Reversible plain error is defined as clear or obvious error that affects a party's substantial rights. See United States v. Olano, 507 U. S. 725, 732, 734 (1993). If we find that the court plainly erred, we will reverse only if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Id. at 732 (citations to quoted cases omitted) (alteration in Olano).

In determining whether an accused's statements were made in the course of plea negotiations so as to trigger the application of Federal Rule of Criminal Procedure 11(e)(6) and Federal Rule of Evidence 410, we "look to the specific facts of each case and examine 'the totality of the surrounding circumstances.'" United States v. Hare, 49

F.3d 447, 451 (8th Cir.) (quoting United States v. Lloyd, 43 F.3d 1183, 1186 (8th Cir. 1994)), cert. denied, 516 U.S. 879 (1995). Upon review of the record, we are unable to say that the District Court plainly erred in concluding that the affidavit was a statement made in the course of plea negotiations and thus subject to the plea-statement rules. The government not only failed to make this argument to the District Court, but actually made explicit representations from which we believe the court could only have concluded that the government conceded the issue.[6] Further, the government produced two letters from counsel for Young's co-defendants, both of which counsel were present during the telephone conference at which the plea negotiations were discussed. Those

---

[6]For example, at the suppression hearing, the government characterized the agreement with Young as follows:

> The government believes that the defendant knowingly and voluntarily entered into an agreement with our office, a contract. He wanted something which was the ability to stay out pending sentencing. He got some other things in exchange. We dismissed an 851 notice which in this case because he had admitted more than a thousand grams of methamphetamine were involved in his offense would have been a 20-year mandatory minimum for him. We made some sentencing stipulations.
>     The defendant did these things, and in exchange for that he offered as a bargain this affidavit that he knew could be used against him if he backed out of his plea. And, in fact, that's what happened.

Hearing Transcript at 56.

The government went on to state that "[t]he government believes this document itself, the plea agreement which was signed in connection with the affidavit, shows that he made a knowing and voluntary waiver of the [plea-statement] rights." Id. at 57.

attorneys characterized their clients' agreements to sign the affidavits as part of the plea negotiations.[7]

In light of the record in this case, we find the government's contention that the affidavit was not part of the plea negotiations, and thus not properly subject to the protections of evidentiary Rule 410 and procedural Rule 11(e)(6), to be without merit.

## B.

We now turn to the more substantive issue before us: Did Young knowingly and voluntarily waive his rights under the plea-statement rules, thus allowing the government to introduce the affidavit in question as evidence at Young's trial?

Whether a valid waiver of rights occurred is a question of law that we review de novo. Cf. United States v. Kind, 194 F.3d 900, 903-04 (8th Cir. 1999) (considering waiver of right to trial counsel), cert. denied, 120 S. Ct. 1217 (2000). "We look to the

---

[7]In a letter addressed to an AUSA and dated October 1999, one of the attorneys explained his recollection of the negotiations regarding the affidavits as follows:

> During the conference, you raised fears that the defendants would not follow through with the agreement to enter pleas after the [presentence investigation] reports were completed. I then suggested that we would provide you with written admissions that could be used in the event that the defendants failed to follow through with the plea agreement. This was acceptable to you and was then made part of the agreement. In addition to keeping the defendants from going into custody prior to sentencing, the written admissions would assist us in seeking acceptance of responsibility.

The attorney representing Young's other co-defendant likewise characterized the affidavit as part of the plea agreement.

circumstances surrounding the signing and entry of the plea agreement to determine whether the defendant willfully agreed to its terms." United States v. Michelsen, 141 F.3d 867, 871 (8th Cir.), cert. denied, 525 U.S. 942 (1998).

The Supreme Court has recognized that the protections offered by Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11(e)(6) are presumptively waivable. In United States v. Mezzanatto, the Court held that, "absent some affirmative indication that the agreement was entered into unknowingly or involuntarily, an agreement to waive the exclusionary provisions of the plea-statement Rules is valid and enforceable." 513 U.S. 196, 210 (1995). In a case where the issue was defendant's waiver of the right to remain silent, the Court defined a voluntary waiver as one that is "the product of a free and deliberate choice rather than intimidation, coercion, or deception." Moran v. Burbine, 475 U.S. 412, 421 (1986). A knowing waiver is one "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Id. We must therefore determine, on the record before us, whether Young voluntarily and knowingly waived his plea-statement rights to have the affidavit excluded for evidentiary purposes in a subsequent prosecution.

In pertinent part, the plea agreement signed by Young stated:

> 11. . . . If the defendant does breach this agreement, he faces the following consequences: (1) all testimony and other information he has provided at any time to attorneys, employees or law enforcement officers of the government, to the court, or to the federal grand jury, may and will be used against him in any prosecution or proceeding; (2) the United States will be entitled to reinstate previously dismissed charges and/or pursue additional charges against the defendant and to use any information obtained directly or indirectly from the defendant in those additional prosecutions; and (3) the United States will be released from

any obligations, agreements or restrictions imposed upon it under this plea agreement.

. . .

15. . . . The defendant acknowledges that he has read each of the provisions of this entire plea agreement with the assistance of counsel and understands its provisions. He has discussed the case and his constitutional and other rights with his attorney. . . .

16. . . . The defendant acknowledges that he is entering into this plea agreement and is pleading guilty freely and voluntarily because he is guilty and for no other reason. The defendant further acknowledges that he is entering into this agreement without reliance upon any discussions between the government and him (other than those specifically described in this plea agreement), without promise of benefit of any kind (other than any matters contained in this plea agreement) and without threats, force, intimidation, or coercion of any kind. . . .

Plea Agreement at 4-6.

The District Court found that the language of the plea agreement was insufficient to constitute a valid waiver of Young's rights as conferred by the plea-statement rules. Noting that "[a] defendant cannot 'knowingly' waive rights unless he in fact 'knows' he or she has such rights in the first place," the court found no evidence "that Young was aware of the nature of his rights with regard to plea statements." Young, 73 F. Supp. 2d at 1024, 1025.

The government, however, insists that the language of the plea agreement does constitute a valid waiver of Young's plea-statement rights. The document, as executed by Young, clearly stated that he understood the provisions therein, among which was the acknowledgment that a consequence of breaching the plea agreement could be that

"all testimony and other information he . . . provided at any time to attorneys, employees or law enforcement officers of the government, to the court, or to the federal grand jury, may and will be used against him in any prosecution or proceeding." Plea Agreement at 4. According to the government, because Young understood the potential consequences of his breach of the plea agreement, he necessarily understood the rights that could be affected by those consequences. Further, the government notes, Young acknowledged that he had discussed "his constitutional and other rights with his attorney." Id. at 5 (emphasis added). The government asserts that implicit in advice regarding the consequences of foregoing a right is the knowledge that a right exists. The government therefore claims that, while Young may not have been advised of his Rule 410 and Rule 11(e)(6) rights by specific citation to the rules or in the explicit language of the rules, his knowledge nonetheless was sufficient for a valid waiver.

We find the government's arguments persuasive. Although the specific issue before us is one of first impression in this Court, we find our precedents regarding the waiver of appeal rights by means of plea agreements to be instructive. In United States v. Rutan, we concluded that the defendant's waiver of his right to appeal was knowing and voluntary, noting that the "assertion that [a defendant] cannot waive an unknown right is baseless." 956 F.2d 827, 830 (8th Cir. 1992). Similarly, in Michelsen, the defendant contended that, because the magistrate judge failed to engage him in a specific discussion regarding his appellate rights during his plea hearing, his waiver of those rights could not be considered knowing and voluntary. We disagreed, determining that "such a dialogue is not a prerequisite for a valid waiver of the right to appeal." Michelsen, 141 F.3d at 871.

Applying Rutan and Michelsen to the facts of this case, we conclude that Young's waiver of his plea-statement rights was knowing and voluntary. The record establishes that Young is a fifty-year-old man who gives every appearance of being a competent, functioning member of society. He was represented by counsel at the time

of his plea negotiations. We disagree with the District Court's conclusion that, absent some proof that Young was made aware of the specific provisions of the plea-statement rules, his waiver is rendered unknowing. We do not believe that the failure to include a rote recitation of the rules in the plea agreement constitutes an "affirmative indication that the agreement was entered into unknowingly or involuntarily." Mezzanatto, 513 U.S. at 210.

We are satisfied that, when Young signed the plea agreement, he was aware of the benefits he was securing, the rights he was foregoing, and the consequences of breaching the agreement. We find no evidence that he entered into the agreement involuntarily or unknowingly. Thus, the government is entitled to the benefit of its bargain and may use the affidavit in its case against Young.

For the foregoing reasons, the judgment of the District Court is reversed and the case is remanded for trial.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-10-