# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-2073

———————

United States of America,                *
                                       *
           Plaintiff - Appellant,      *
                                       *   Appeal from the United States
       v.                              *   District Court for the Western
                                       *   District of Missouri.
Jamal T. Norris,                 *
                                       *
           Defendant - Appellee.     *

———————

Submitted: December 14, 2004
Filed: March 10, 2006

———————

Before MELLOY, BRIGHT, and BENTON, Circuit Judges.

———————

MELLOY, Circuit Judge.

The government appeals the decision of the district court[1] granting the appellee's motion for specific performance of a signed plea agreement. The government argues that the district court erred because it enforced an agreement from which the government had legally withdrawn. We affirm.

———————

[1] The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

# I.

On May 8, 2002, the government charged Jamal T. Norris and Shawn Tuberville with eight counts related to a conspiracy to distribute more than fifty grams of cocaine base. On December 5, 2002, Norris pled guilty to the third count of the indictment, distribution of more than five grams of cocaine base. On March 20, 2003, Norris moved to withdraw his guilty plea and the district court granted his motion.

The parties then entered into new plea negotiations. These negotiations resulted in a written plea agreement, signed by both Norris and the government. On September 12, 2003, Norris attempted to enter a guilty plea in accordance with the plea agreement that he and the government had signed. At the plea hearing, the district court had completed virtually all of the requirements of Federal Rule of Criminal Procedure 11, including the defendant's acknowledgment of guilt and factual basis for the guilty plea. At that time, the Assistant United States Attorney (AUSA) interrupted the proceedings, before the court had accepted the plea, by stating that the plea agreement would only prevent the government from prosecuting Norris for crimes during the indictment period, April 2, 2002 through April 24, 2002. Norris's counsel objected to this interpretation of the plea agreement and the district court called for a recess.

Soon after, the government withdrew the plea agreement that it had signed. Norris moved to compel specific performance of the plea agreement. On October 8, 2003, the government issued a twenty-one count, superceding indictment against Norris and Steve L. Wright, another alleged co-conspirator, for crimes relating to a conspiracy to distribute more than fifty grams of cocaine base and other controlled substances between January 1, 2000 and December 31, 2002. The new indictment included the alleged conduct described in the previous indictment against Norris.

A magistrate judge held a hearing on Norris's motion to compel specific performance of the plea agreement. During the hearing, the AUSA stated that the government would not use any statement that Norris made at either of the previous plea hearings. The government did not allege any breach by Norris and did not contest the fact that he was fully prepared to perform his obligations under the plea agreement. The only reason the government withdrew the plea agreement was that a new AUSA had taken over the case and felt Norris had gotten too good of a deal under the plea agreement negotiated by a former AUSA.[2]

The magistrate judge issued a report and recommendation that recommended Norris's motion be granted and the superceding indictment be dismissed. The district court overruled the magistrate's recommendation and denied Norris's motion. However, after Norris filed a motion for reconsideration, the district court reversed its previous order and adopted the report and recommendation of the magistrate judge. In doing so, the court granted the motion to compel specific performance and dismissed the superceding indictment. The government appeals.

II.

We review a decision to compel specific performance of a plea agreement de novo. United States v. Van Thournout, 100 F.3d 590, 594 (8th Cir. 1996). This is a case of first impression for our court, but there are significant foundational sources of law guiding our decisions in enforcing plea agreements.

---

[2] This case does not involve a situation where the government argues cause to reject the agreement. Whether, and under what circumstances, cause would allow the government to withdraw from a plea agreement is an issue we leave for another day. In this case, the government wishes us to confirm its position that it can withdraw from a plea agreement for any reason, or no reason, at all.

There are three legal sources for an argument that a plea agreement should be enforced. First, under the doctrine set forth in <u>Santobello v. New York</u>, 404 U.S. 257 (1971), there is a due process right to enforce an agreement with the prosecution if the defendant honors the terms of that agreement. However, as the government argues, under <u>Mabry v. Johnson</u>, 467 U.S. 504, 507 (1984), due process rights do not attach in a situation where a plea agreement is aborted before it is approved by the judge. Although <u>Mabry</u> was a habeas case, and thus dealt with a state plea agreement, the principle still holds: there is no due process right at issue for aborted plea agreements. Therefore, under <u>Mabry</u>, due process considerations cannot guide our opinion in the present matter.

Second, courts can look to general contract law to enforce the terms of plea agreements. Generally, plea agreements are to be construed as contractual in nature, and contract principles should be applied in interpreting them. <u>United States v. Dewitt</u>, 366 F.3d 667, 669 (8th Cir. 2004). While the government argues that <u>Mabry</u> effectively allows the prosecution to exit a plea agreement under any circumstances and at any time until the plea is entered, we believe that holding is limited to due process reasoning and not general contract principles.

Third, under Rule 11 of the Federal Rules of Criminal Procedure, a defendant can argue that the prosecution has an obligation to fulfill its promises outlined in a plea agreement. Rule 11(d) affords the defendant an opportunity to withdraw from a plea agreement for any reason until the moment the plea has been entered. However, Rule 11 is silent on the timing and conditions under which the government may withdraw from a plea agreement. Further, as will be discussed below, there are instances where a defendant may be penalized for refusing to plea in accordance with a plea agreement. While Rule 11 does not give specific guidance regarding the question in this case, its silence on the timing of prosecutorial withdrawal from agreements combined with specific permission for defendants creates at least an

inference that prosecutors do not enjoy the same latitude as defendants in withdrawing from plea agreements.

III.

Using general contract principles, we find that the defendant should be allowed to enforce the plea agreement in this case. The government correctly argues that a plea agreement is generally not enforceable until the district court signs it. United States v. Walker, 927 F.2d 389, 390 (8th Cir. 1991). However, this general rule is meant to address instances where the court finds the plea bargain unacceptable. In the present matter, there is nothing in the record to indicate that the district court had any objections to the terms of the plea agreement. The district court's final decision to enforce the plea agreement is counter-indicative of any potential objections.

United States v. Young, 223 F.3d 905 (8th Cir. 2000), is the closest to being on point and we believe controls the disposition of this case. In Young, the defendant entered into a plea agreement. As part of the written agreement, the defendant executed an affidavit, that was attached to the agreement, in which he admitted facts that established all the essential elements of the crime. Before actually entering a plea, the defendant absconded. Young was later arrested and a new trial date was set. The government gave notice that it intended to introduce the affidavit at trial. When the defendant resisted, the trial court ruled the affidavit inadmissible. The ruling was based on the trial court's conclusion that the affidavit was signed as part of plea negotiations and therefore inadmissible under Federal Rule of Criminal Procedure 11(e)(6) and that the signing of the plea agreement did not result in a knowing waiver of the defendants rights under Rule 11(e)(6) and Federal Rule of Evidence 410. The government took an interlocutory appeal of the order suppressing the affidavit.

In reversing the trial court, our court first held that the affidavit was part of plea negotiations and therefore protected by Rule 11(e)(6) and Rule 410. Young, 223 F.3d

-5-

at 911.  Our court then turned to the issue of whether those protections had been waived.  The opinion recites language from the plea agreement in which the defendant acknowledged he was entering into an agreement with the government, giving up certain rights, and that if he breached the agreement, information he provided to the government may be used against him in later proceedings.  Our court concluded that Young was aware of his rights, knowingly waived them, and understood the consequences of his breach.  Most importantly, for our purposes, the court concluded: "Thus, the government is entitled to the benefit of its bargain and may use the affidavit in its case against Young."  Id.

One can say the same of the government and defendant in this case.  The government knew the benefits it was securing and the rights it was foregoing and the consequences of breaching the agreement. The fact that the roles are reversed, the defendant was the breaching party in Young and the government is the breaching party in this case, does not compel a different result.  In this case, the only reasonable remedy for the defendant is specific performance of the agreement.

The government argues that the district court was incorrect in ordering specific performance because Norris is not able to show any detrimental reliance.  Our response is twofold.  First, turning back to Young, there was no allegation or showing by the government of detrimental reliance or prejudice of any kind, yet the government received the benefit of its bargain.  Secondly, and perhaps more importantly, there is the reliance that comes from relying upon the good faith of the government in plea negotiations.  We have grave reservations about a system that would allow the parties to enter into good faith plea negotiations, sign a written agreement, stop trial preparations, continue a trial date, and then face the prospect that the government could withdraw from the agreement on a whim. Chief Justice Burger spoke of the "unfortunate lapse in orderly prosecutorial procedures" when the state fails to keep its commitments under a plea agreement.  Santobello, 404 U.S. at 260.  The Chief Justice went on to outline the benefits of plea negotiations to the criminal

justice system.  Id.  If the defendant is found to waive his rights at the moment of signing, the same must be true of the government for the contract to make sense and for plea bargaining to be a reliable system for administering justice.

## IV.

Accordingly, the judgment of the district court is affirmed.

_____