# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2513

_____

|  |  |  |
|---|---|---|
| | * | |
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Western District of Missouri. |
| | * | |
| Jerry R. Poe, | * | [UNPUBLISHED] |
| | * | |
| Appellant. | | |

_____

Submitted: November 16, 2006
Filed: April 6, 2007

_____

Before RILEY, HANSEN, and SMITH, Circuit Judges.

_____

HANSEN, Circuit Judge.

Jerry R. Poe appeals the two-year sentence imposed upon him after the district court revoked his supervised release. He contends that the district court improperly changed the terms of his supervised release because the waiver form he signed was invalid. After careful review, we remand the case to the district court for further proceedings.

## I.

Jerry Poe was convicted by a jury on two counts of mailing a threatening communication. On March 12, 1996, the district court sentenced him to 60 months of imprisonment on each count, with the sentences to be served both consecutively to each other and to a state sentence Poe had previously received. Poe was also sentenced to three years of supervised release.

Poe's period of incarceration was scheduled to end on February 27, 2006, at which time he would begin serving his three-year period of supervised release. Sometime prior to the end of November 2005, the United States Probation Office determined that Poe should be placed into a community corrections center upon his release from prison as part of his supervised release, and it decided that Alpha House in Springfield, Missouri, would be a proper placement. On November 29, 2005, Poe was approached by his prison case manager. The case manager presented Poe with a form that waived Poe's right to a hearing and to the assistance of counsel regarding this proposed change in his supervised release terms–the change requiring that Poe live in Alpha House for up to six months after his release from prison. It is undisputed that, at this time, Poe signed and dated the waiver form, agreeing to the change in the terms of his supervised release and agreeing to be assigned to Alpha House. See Fed. R. Crim. P. 32.1(c)(2)(A).

Relying on the original waiver, the district court entered an order confirming the changes to the terms of Poe's supervised release on December 28, 2005. In early February 2006, Poe was given documents listing the rules and regulations of Alpha House. A probation officer informed Poe that he needed to sign these documents to acknowledge that he had read the rules and would abide by them. Poe refused to sign the documents.

Poe was released from prison on February 27, 2006, and at that time a probation officer again directed Poe to sign the documents stating he would abide by the rules, as the documents needed to be signed before Poe could enter Alpha House. Poe again refused and was immediately taken into custody for violating the terms of his supervised release for refusing the probation officer's order to sign the documents.

A preliminary hearing was held before a magistrate judge to determine if Poe's supervised release should be revoked. At this hearing, Poe acknowledged that he signed the waiver form, agreeing to the change in his supervised release terms, but claimed that he only did so because he was told that if he did not sign the waiver form he would not be released from prison. Poe further testified that while he was willing to enter a halfway house (but not a community corrections center) at the time he signed the waiver, after he read the rules and regulations of Alpha House he changed his mind because he had been misled as to how restrictive of his liberty the placement would be, and he believed that a number of Alpha House's rules were unconstitutional. In addition, Poe stated that he was led to believe that Alpha House was a less restrictive halfway house, not a community corrections center. He claims he attempted twice to be placed into a community corrections center, such as Alpha House, in the months prior to his release from prison, but that he was turned down each time by the Bureau of Prisons.

At the final revocation hearing, Poe told the district court that he had not refused to go to Alpha House, but only refused to sign the "business contract" because it was unconstitutional. Poe again argued that his waiver of a hearing regarding the change in his supervised release terms was invalid because it was not made knowingly, intelligently, or voluntarily. The district court found that Poe had violated the terms of his supervised release when he refused the probation officer's order to sign the rules agreement with Alpha House and it revoked Poe's supervised release, sentencing him to two consecutive terms of twelve months of imprisonment. The district court did not address Poe's contention that the waiver was invalid. Poe

-3-

appeals, claiming that the district court violated his due process rights by modifying the terms of his supervised release without a valid waiver, and therefore the district court improperly revoked his supervised release for violating the added condition.

## II.

Poe's argument hinges on whether or not the waiver form he signed accepting the change in his supervised release and agreeing to be assigned to Alpha House was a valid waiver. "Whether a valid waiver of rights occurred is a question of law that we review de novo." United States v. Young, 223 F.3d 905, 909 (8th Cir. 2000), cert. denied, 531 U.S. 1168 (2001). Factual findings made by the district court are reviewed for clear error. United States v. Veltman, 9 F.3d 718, 721 (8th Cir. 1993), cert. denied, 511 U.S. 1044 (1994).

In the preliminary revocation hearing before the magistrate, Poe attacked the validity of the waiver. However, the magistrate judge stated that the preliminary revocation hearing was not the proper forum for that issue, and the district court would have to take it up for resolution. Poe again raised the issue of an invalid waiver before the district court at the final revocation hearing. The district court adopted the transcript of the proceedings of the preliminary hearing before the magistrate, and Poe's arguments were fully included in the record. Neither the magistrate judge nor the district court made any findings regarding the validity of the waiver signed by Poe. We have no fact-findings to review regarding the circumstances surrounding Poe's execution of the waiver form, and the district court's rather summary disposition of the case does not indicate whether it even considered the arguments raised by Poe throughout the proceedings. Thus, we believe that this matter needs to be taken up by the district court in the first instance to determine if the waiver form signed by Poe regarding changes to the terms of his supervised release was valid. See United States v. Horn, 76 F. App'x 747, 749 (8th Cir. 2003) (unpublished) (per curiam) (remanding case to the district court for initial determination of whether appellant's waiver to

changes in terms of his supervised release was valid, after appellant raised the issue before the district court but it was not addressed); see also United States v. Thomas, 536 F.2d 1253, 1254 (8th Cir. 1976) (determining that remand was necessary to determine if there was a valid waiver of the defendant's right to counsel at a lineup).

We note in passing that the district court, instead of relying on the disputed executed waiver to effect a change in Poe's supervised release conditions, could have noticed a hearing with Poe and his counsel then present, to determine whether or not Poe's supervised release conditions should be modified to include his placement in Alpha House. Such an alternative may still be available upon remand. See 18 U.S.C. § 3583; Fed. R. Crim. P. 32.1(b), (c).

### III.

Accordingly, we remand the case to the district court for further proceedings not inconsistent with this opinion.

_____