# United States Court of Appeals
## For the First Circuit

No. 02-1879

UNITED STATES OF AMERICA,

Appellee,

v.

ELMER C. RODRIGUEZ-CASTILLO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Selya, Circuit Judge,
Coffin and Cyr, Senior Circuit Judges.

Douglas J. Beaton on brief for appellant.
H.S. Garcia, United States Attorney, Sonia I. Torres, Chief, Criminal Division, and Aramis G. Ríos, Assistant United States Attorney, on brief for appellee.

November 17, 2003

**SELYA**, **Circuit Judge**.    In  this  appeal,  defendant-appellant Elmer C. Rodriguez-Castillo (Rodriguez) raises questions concerning the operation of former Rule 16(a)(1)(B) of the Federal Rules of Criminal Procedure[1] and the imposition of his sentence. Concluding that his arguments lack merit, we affirm the judgment below.

We  glean  the  relevant  facts  from  the  change-of-plea colloquy, the presentence investigation report (PSI Report), and the transcript of the disposition hearing.  See United States v. Brewster, 127 F.3d 22, 23 (1st Cir. 1997); United States v. Dietz, 950 F.2d 50, 51 (1st Cir. 1991).  In all events, the facts are essentially uncontradicted.

On  December  8,  1998,  a  federal  grand  jury  indicted Rodriguez  and  three  compatriots  for  various  drug-trafficking offenses.  Rodriguez initially asserted his innocence.  Early in the case, the government supplied him with a summary of his prior criminal record as then known to it.  The government's letter of transmittal left no doubt that the criminal history was incomplete. The convictions listed in this hypoplastic summary, without more,

---

[1]Effective December 1, 2002, a new rule, redesignated as Rule 16(a)(1)(D), replaced former Rule 16(a)(1)(B).  The substance of the rule remains the same, but the wording has changed slightly (e.g., the new version states that "the government must furnish" certain information whereas the original version states that "the government shall furnish" such information).  Since the events in this case transpired before the effective date of the revision, we refer throughout to the original version.

would have placed Rodriguez into criminal history category (CHC) II for sentencing purposes.

Despite the plainly incomplete nature of the government's criminal history submission, Rodriguez commenced plea negotiations. He subsequently entered into a plea agreement (the Agreement). Under the Agreement, the government committed itself to dismiss certain charges and embrace a reduced drug-quantity determination in exchange for Rodriguez's plea of guilty to a single count of illegal importation of cocaine in violation of 21 U.S.C. § 952(a).

On March 21, 2002, Rodriguez entered a guilty plea to the importation count and the district court commissioned the preparation of the PSI Report. When compiled, the report included a more accurate description of Rodriguez's criminal past. In particular, it identified a 1989 felony conviction for aggravated unlawful appropriation of property in violation of 33 P.R. Laws Ann. § 4272 that had not been included in the government's earlier summary. That additional conviction pushed Rodriguez into CHC III. As we shall see, this category change had a discernible effect on the guideline sentencing range (GSR).

The drug-quantity compromise contained in the Agreement fixed the weight of the cocaine attributable to Rodriguez at 149 kilograms, and, thus, lowered his base offense level under the sentencing guidelines to 36. Rodriguez was entitled to a three-level credit for timely acceptance of responsibility and a two-

level reduction reflecting his minor role in the offense of conviction. See USSG §§3E1.1, 3B1.2 (2000). Had he remained in CHC II, his GSR would have been 121-151 months. The switch to CHC III increased his GSR to 135-168 months.

At the disposition hearing, the district court sentenced Rodriguez at the nadir of the applicable GSR, ordering him to serve an incarcerative term of 135 months. This timely appeal followed.

Rodriguez first complains that, during the pre-plea negotiations, the government failed to comply with the strictures of former Rule 16(a)(1)(B) of the Federal Rules of Criminal Procedure. Although one might think that a defendant would know his own criminal history, the rule mandates that, "upon request by the defendant, the government shall furnish to the defendant such copy of the defendant's prior criminal record, if any, as is within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government." Id. This language is mandatory, and courts have not hesitated to compel the government to effect such production. See, e.g., United States v. McDaniel, 428 F. Supp. 1226, 1228 (D. Okla. 1977).

Here, Rodriguez made a timely request for his criminal history. The government responded with a palpably incomplete summary. The record is murky as to whether the government's partial response reflected the exercise of due diligence. The

record is clear, however, that Rodriguez was not misled. The government informed him that its proffer was incomplete, stating in its transmittal letter that it "had been informed that [he] had previously been convicted of a variety of felony offenses" and that it would "supplement [its] response when additional information is received."

The next step was up to Rodriguez. He could have awaited an encyclopedic response or moved to compel one. He chose neither course. Instead, he pursued plea negotiations, struck a final bargain, and changed his plea. In so doing, Rodriguez waived his right to complain about the government's failure to effectuate full and complete compliance with former Rule 16(a)(1)(B). We explain briefly.

A defendant who subscribes an unconditional guilty plea is deemed to have waived virtually all claims arising out of garden-variety errors that may have antedated the plea. See United States v. Cordero, 42 F.3d 697, 698-99 (1st Cir. 1994) (collecting cases). Although there is an exception to this principle, see, e.g., id. at 699 (noting that jurisdictional issues are not waived), Rodriguez's case does not fit within its confines. He knowingly entered an unconditional guilty plea; advised the district court during the change-of-plea colloquy that he understood that his guilty plea "waiv[ed] [his] right to a trial and all the other rights" associated therewith; and made no claim,

-5-

then or now, that the sentencing court lacked authority to hear and determine his case.[2]

To be sure, the pre-plea colloquy between the court and defense counsel was less than a model of clarity, and that colloquy may well have given Rodriguez hope that his CHC would remain at II. But such an interpretation would be unreasonable in light of the government's up-front notice of the distinct possibility that additional information about prior convictions might surface. Hope may, as the aphorist would have it, spring eternal, but the frustration of an expectation founded on hope alone, unanchored in objective reasonableness, is not a cognizable basis for relief on appeal.

That ends this phase of the matter. An unconditional guilty plea waives any and all independent non-jurisdictional claims arising out of alleged errors antedating the plea. Thus, Rodriguez waived his right to insist upon compliance with the provisions of former Rule 16(a)(1)(B) by his decision to plead guilty unconditionally without first having obtained, by a motion to compel or otherwise, his complete criminal record. He cannot now be heard to complain about the government's purported lapse.

---

[2]We emphasize the unconditional nature of the plea because a defendant may tender a <u>conditional</u> guilty plea and still preserve antecedent claims of error. <u>See</u> Fed. R. Crim. P. 11(a)(2); <u>see also</u> <u>United States</u> v. <u>Caraballo-Cruz</u>, 52 F.3d 390, 392 (1st Cir. 1995) (discussing effect of conditional plea). Rodriguez did not avail himself of this option.

Rodriguez's remaining assignment of error need not occupy us for long. He strives to persuade us that the district court erred in not departing downward from the GSR on the ground that his criminal history score (which placed him in CHC III) overrepresented his criminal past. We are not convinced.

Ordinarily, a district court's discretionary decision not to depart from the GSR is unappealable. See United States v. Pierro, 32 F.3d 611, 619 (1st Cir. 1994); United States v. Jimenez-Otero, 898 F.2d 813, 815 (1st Cir. 1990). There are, however, a few isthmian exceptions to this rule. One exception springs into play when a sentencing court's decision not to depart from the GSR results from a misperception of its own authority. See Pierro, 32 F.3d at 619 (explaining that "appellate jurisdiction may attach if it appears that the failure to depart stemmed from the sentencing court's mistaken impression that it lacked the legal authority to deviate from the guideline range or, relatedly, from the court's misapprehension of the rules governing departures") (quoting United States v. Gifford, 17 F.3d 462, 473 (1st Cir. 1994)). The basis for the exception is that the sentencing court's determination that it lacked departure authority is not an exercise of discretion, but, rather, a legal judgment (and, thus, appealable as of right). See 18 U.S.C. § 3742(a)(2); see also Jimenez-Otero, 898 F.2d at 814.

Rodriguez relies upon this exception. He notes that the sentencing court commented, in colloquy, that it saw "no way" to go under the low end of the GSR obtained by the use of CHC III. Rodriguez suggests that this remark evinces the court's misperception that it lacked the power to depart.

This suggestion rests on a porous foundation. It takes a bit of dialogue completely out of context. Rodriguez never made a request for a downward departure at the disposition hearing, and the court's comment did not refer to that possibility at all. Rather, the quoted statement was made in connection with the court's determination as to which CHC obtained (and, accordingly, which GSR applied). Consequently, the "lack of authority" exception is plainly inapplicable here.

As a fallback, Rodriguez argues that he made the "functional equivalent" of a departure request. That argument fails. In the first place, the transcript of the disposition hearing reveals that nothing remotely resembling a departure request was made. The argument is, therefore, groundless. In the second place, the argument, even if well-founded, would sink under the weight of the aforementioned jurisdictional bar. See Pierro, 32 F.3d at 619.

Rodriguez next asseverates that even in the absence of a departure request, the district court should have departed sua sponte. His starting point is uncontroversial: it cannot be

gainsaid that a sentencing court has the authority to depart on its own volition. See, e.g., USSG §4A1.3; see generally United States v. Burns, 501 U.S. 129, 138 (1991) (describing procedure to be employed when district court essays a sua sponte departure under USSG §5K2.0). Nevertheless, the idea that a sentencing court's failure to depart sua sponte creates an appealable issue is a novel one. We find it unsurprising that Rodriguez cites to no case law supporting the notion. After all the decision to depart is typically an exercise of discretion and, absent a focused request by one of the parties, it would be surpassingly difficult to hold that the sentencing court abused its discretion in not departing. Cf. United States v. Reveron Martinez, 836 F.2d 684, 687 (1st Cir. 1988) (holding that a district court has no duty sua sponte to consider a change of venue in a criminal case).

From a conceptual standpoint, Rodriguez's asseveration is also unconvincing. Its chief flaw is that it runs contrary to our usual rule for preserving claims of error. Because the departure issue was not raised in the district court, analogous precedents suggest that we should simply hold it unpreserved for appeal. See Malave v. Carney Hosp., 170 F.3d 217, 222 (1st Cir. 1999) (discussing the "bedrock rule of appellate practice that . . . matters not raised in the trial court cannot be hawked for the first time on appeal"); see also United States v. LaGuardia, 902 F.2d 1010, 1012-13 (1st Cir. 1990) (stating, in a case where a

departure had not been requested below, that the "usual praxis" would be "to ignore [the issue] on appeal").

We are aware that one respected court has granted plain error review in an instance in which a defendant failed to preserve a departure argument for appeal.  See United States v. Draffin, 286 F.3d 606, 609 (D.C. Cir. 2002).  We need not decide today the correctness of that approach. In the best of circumstances, "[t]he plain error hurdle is high."  United States v. Hunnewell, 891 F.2d 955, 956 (1st Cir. 1989).  To vault that hurdle, an appellant must make a fourfold showing:  "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings."  United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).  This case stumbles over each of the four elements.

The short of it is that Rodriguez's argument for a departure is not very strong.  The facts may not even be sufficient to support a discretionary departure; they surely are not sufficient to mandate one.  We discern no error (let alone any obvious error) in the sentencing court's failure to depart downward.  Finally, Rodriguez points to nothing that suggests that a downward departure is needed either to forestall a miscarriage of justice or to restore public confidence in the criminal justice system.  We conclude, therefore, that Rodriguez's belated quest for

a departure does not come close to satisfying the criteria established for plain error review.[3]  Compare <u>United States</u> v. <u>Belk</u>, 346 F.3d 305, ___ (2d Cir. 2003) [No. 02-1636, slip op. at 14], in which the court wrote that "[t]o the extent that plain error forfeiture analysis under Fed. R. Crim. P. 52(b) extends to a district court's failure to depart downwardly," it found "no plain error in the District Court's failure sua sponte to consider and grant a vertical downward departure."

We need go no further.  We hold that (i) Rodriguez's guilty plea effectively foreclosed his right to complain about any shortfall in the government's compliance with the strictures of former Rule 16(a)(1)(B), and (ii) his search for a downward departure is doomed by his failure to ask the sentencing court for one.  For the sake of completeness, we add that even if the lower court's failure to depart sua sponte is reviewable for plain error — a matter on which we take no view — Rodriguez's appeal would languish.

**<u>Affirmed</u>**.

---

[3]This conclusion reinforces the <u>Draffin</u> court's intuition that "[a]s a practical matter denying review of the failure to depart <u>sua</u> <u>sponte</u> and reviewing it for plain error will ordinarily yield the same result:  the sentence will be upheld."  286 F.3d at 609-10.