# United States Court of Appeals
## For the First Circuit

---

No. 07-1387

UNITED STATES OF AMERICA,

Appellant,

v.

WINSLOW NEWBERT,

Defendant, Appellee.

---

APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

---

Before

Boudin, Chief Judge,
Lynch, Circuit Judge,
and Schwarzer,[*] Senior District Judge.

---

F. Mark Terison, Senior Litigation Counsel, with whom Paula D. Silsby, United States Attorney, was on brief, for appellant.
Richard L. Hartley for appellee.

---

October 11, 2007

---

[*] Of the Northern District of California, sitting by designation.

**LYNCH**, <u>Circuit Judge</u>. In this case we decline to enforce a defendant's waiver of rights contained in a plea agreement.

It has become common for the prosecution to require that plea agreements which defendants enter contain a waiver of constitutional and statutory rights. The Supreme Court has, in specific contexts, upheld the practice. <u>See,</u> <u>e.g.,</u> <u>United States v. Ruiz</u>, 536 U.S. 622, 629-33 (2002) (defendant can waive right to government's required disclosure of evidence related to any affirmative defense or impeachment of witnesses); <u>United States</u> v. <u>Mezzanatto</u>, 513 U.S. 196, 210 (1995) (defendant can waive right under the rules of evidence to exclude guilty pleas, plea discussions, and related statements); <u>see</u> <u>also</u> <u>Halbert</u> v. <u>Michigan</u>, 545 U.S. 605, 624 n.8 (2005) (recognizing that defendant can waive right to all forms of appeal); <u>Ricketts</u> v. <u>Adamson</u>, 483 U.S. 1, 10 (1987) (defendant can effectively waive double jeopardy protection by signing and then breaching plea agreement); <u>Brady</u> v. <u>United States</u>, 397 U.S. 742, 748 (1970) (noting that a guilty plea necessarily is a waiver of the right against self-incrimination and the right to trial by jury).

This court, following suit, will enforce knowing and voluntary waivers by defendants in plea agreements of their rights to appeal, except when it would work a miscarriage of justice. <u>United States</u> v. <u>Teeter</u>, 257 F.3d 14, 23-25 (1st Cir. 2001). We have also suggested that we will enforce defendants' waivers in

plea agreements or during plea colloquies of their Fifth Amendment right against self-incrimination, United States v. Conway, 81 F.3d 15, 16-17 (1st Cir. 1996), their right to collaterally attack their convictions through habeas proceedings, United States v. Ciampi, 419 F.3d 20, 25-27 (1st Cir. 2005), their rights to trial by jury and assistance of counsel, United States v. Frechette, 456 F.3d 1, 12-14 (1st Cir. 2006), and their right to receive any exculpatory information in the government's possession, United States v. Yeje-Cabrera, 430 F.3d 1, 24 (1st Cir. 2005). Further, we have repeatedly recognized that an unconditional guilty plea is inherently a waiver of all non-jurisdictional claims predating the plea. See, e.g., United States v. Rodriguez-Castillo, 350 F.3d 1, 3-4 (1st Cir. 2003); see also Acevedo-Ramos v. United States, 961 F.2d 305, 307-08 (1st Cir. 1992) (statute of limitations defense waived); United States v. Wright, 873 F.2d 437, 442 (1st Cir. 1989) (challenge to voluntariness of confession waived).

This case concerns a type of waiver our court has not addressed before. This waiver has several distinct components. It occurs only when the defendant is, by terms of the agreement, in breach of the plea agreement. The alleged breach involved is the defendant's motion to withdraw his plea, which has been granted by the district court. The waiver affects the defendant's later rights in the trial court after withdrawal of the plea, and not in the court of appeals. What are waived are that defendant's rights

-3-

under Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11(f) not to have his plea agreement or associated statements admitted into evidence in later proceedings.[1]

Here, defendant Winslow Newbert originally pleaded guilty; he was later permitted to withdraw his plea by the court based on post-plea new plausible evidence of innocence. United States v. Newbert (Newbert I), 471 F. Supp. 2d 182, 199 (D. Me. 2007). The government contended that by successfully withdrawing his plea, Newbert was in breach of his plea agreement and thus had waived his Rule 410 rights. The district court disagreed that defendant was in breach of the agreement and refused to enforce the waiver. Thus, on motion in limine, the court barred the government from using evidence excluded by Rule 410. United States v. Newbert (Newbert II), 477 F. Supp. 2d 287, 294 (D. Me. 2007).

The prosecution took this interlocutory appeal from the pre-trial ruling excluding this evidence. See 18 U.S.C. § 3731. We affirm, finding no error in the court's construction of the agreement and in its exclusion order.

---

[1] Rule 410 provides in relevant part: "[E]vidence of the following is not . . . admissible against the defendant who made the plea . . .: (1) a plea of guilty which was later withdrawn; . . . (3) any statement made in the course of any proceedings under Rule 11 of the Federal Rules of Criminal Procedure . . .; or (4) any statement made in the course of plea discussions with an attorney for the prosecuting authority . . . which result in a plea of guilty later withdrawn." Fed. R. Evid. 410.

Rule 11(f) provides: "The admissibility or inadmissability of a plea, a plea discussion, and any related statement is governed by Federal Rule of Evidence 410." Fed. R. Crim. P. 11(f).

I.

During a February 2002 search of Newbert's home, the police discovered, among other things, 18.3 grams of cocaine. Based on this evidence, Newbert pleaded guilty in June 2006 to a single violation of 21 U.S.C. § 841(a)(1), possession with intent to distribute a controlled substance. His plea agreement with the government included waivers of his rights to appeal and to a speedy trial; it also included the following provision, at issue in the present case:

> If defendant fails to enter a guilty plea or seeks and is allowed to withdraw his plea of guilty entered pursuant to this Agreement, under circumstances constituting a breach of this Agreement, or if Defendant's guilty plea is rejected due to Defendant's conduct constituting a breach of this Agreement, he hereby waives any rights that he has under Rule 410 of the Federal Rules of Evidence and Rule 11(f) of the Federal Rules of Criminal Procedure. Defendant understands that by waiving such right, the following would be admissible against him in any subsequent prosecution for the conduct underlying the charges in the case: (a) the fact that he pleaded guilty in this case; (b) all statements made in the course of the guilty plea; and (c) all statements made during the course of plea discussions.

Newbert II, 477 F. Supp. 2d at 290 (quoting clause 5 of the plea agreement).

Less than two months later, Newbert moved to withdraw his guilty plea. He argued that his plea had been based on a desire to protect his wife and his friend James Michael Smith, but he had since learned that his wife had moved in with Smith and that Smith was preparing to testify against him. Further, one of his

daughters had informed Newbert that she had seen Smith place a pill bottle in Newbert's house near where the cocaine was found shortly before the February 2002 police search; his other daughter told him that Smith had confessed to her that it was his cocaine the police had discovered.[2]  Smith was to be the government's sole civilian witness against Newbert, and the government had no physical evidence linking the cocaine to Newbert other than the location of its discovery.

The court ruled that Newbert's guilty plea had been knowing, intelligent and voluntary, but that there was nevertheless a "fair and just" reason to allow Newbert to withdraw his plea. Newbert I, 471 F. Supp. 2d at 199; see also Fed. R. Crim. P. 11(d)(2)(B).  The court reasoned that Newbert had presented not only new evidence as to his innocence, but also a plausible explanation for why he would have pleaded guilty in the first place -- and why his motivation to do so had since changed.  Newbert I, 471 F. Supp. 2d at 199.  Further, Newbert had moved quickly to withdraw his plea before his sentencing, and the court emphasized that the government would suffer no prejudice as a result.  It was the government that had waited for more than three years to indict Newbert in the first place, and the government's case relied primarily on law enforcement witnesses and experts, whose memories

---

[2]  This information was not entirely new, although its source was.  Newbert's wife had told him, prior to his plea, that the cocaine may have been Smith's.

were assumed to be more reliable than those of civilian witnesses. Id. Further, "[t]here [was] no suggestion that critical witnesses [were] unavailable, that evidence [had] been lost, or that any similar prejudice would obtain." Id. "Ultimately," the court concluded, "because a man's reputation and freedom hang in the balance, . . . the better course is to allow a jury to determine" whether or not Newbert is in fact guilty. Id.

The government was not pleased with this result and quickly filed a motion to reconsider the order granting the withdrawal; when that motion was denied, the government filed a motion to reopen the hearing on withdrawal to present further evidence. That motion was also denied. Trying a different tack, the government moved in limine for a ruling that Newbert's guilty plea and all related statements could be introduced against him at his trial, based on the waiver language in Newbert's plea agreement. Newbert filed a competing motion in limine to exclude this evidence.

The district court ruled that Newbert was not in breach of his plea agreement when he withdrew his plea and thus that Federal Rule of Evidence 410 still applied in full. Newbert II, 477 F. Supp. 2d. at 288. The court referred to contract law principles and noted that the clause assumed that some withdrawals of guilty pleas would not constitute a breach. Id. at 290-91. Rejecting the government's argument, repeated before this court,

-7-

that only guilty plea withdrawals based on government error or agreed to by the government would not breach the agreement, the judge concluded that if "the defendant's post-plea evidence is sufficient to substantially affect the basis upon which the defendant entered the plea agreement, a motion to withdraw cannot constitute a breach of this agreement." Id. at 293. This, the judge noted, was the logical corollary of the government's argument that withdrawal would not be in breach if the government "agrees that new evidence establishes the defendant's innocence," for "the phrase must be interpreted evenly to allow for withdrawal without breach when the defendant presents post-plea evidence of innocence and the Court concurs, even if the government does not." Id. at 294.

## II.

We review the district court's order excluding evidence for abuse of discretion. White v. N.H. Dept. of Corrections, 221 F.3d 254, 262 (1st Cir. 2000). Here the exclusion is based on construction of the plea agreement. A construction of the agreement based on an error of law would constitute an abuse of discretion. To the extent the district court's conclusion involved questions of law as to the construction of the agreement, our review is de novo. United States v. Clark, 55 F.3d 9, 11 (1st Cir. 1995). This includes the question of whether there was a breach of the agreement. United States v. Doe, 233 F.3d 642, 643-44 (1st

Cir. 2000); Clark, 55 F.3d at 11; United States v. Atwood, 963 F.2d 476, 478 (1st Cir. 1992). To the extent the court made factual findings, such as the interpretation of ambiguous terms in light of the intent and conduct of the parties, our review of the underlying factual findings is for clear error. Clark, 55 F.3d at 11. The court made no error of fact or law, and there was no abuse of discretion.

Rule 410 of the Federal Rules of Evidence, and Rule 11(f) of the Federal Rules of Criminal Procedure by incorporation, is the legacy of Kercheval v. United States, 274 U.S. 220 (1927), in which the Supreme Court recognized that allowing a withdrawn guilty plea to be used against a defendant defeats the purpose of allowing the withdrawal in the first place. Id. at 224 ("Giving to the withdrawn plea any weight is in principle quite as inconsistent with the prior order [allowing withdrawal of the plea] as it would be to hold the plea conclusive."); Fed. R. Evid. 410 note (citing Kercheval). As the order allowing the withdrawal is an exercise of the court's sound discretion, to effectively negate that order would not only harm the defendant's rights, but would also undermine the conclusiveness of the court's ruling. See Kercheval, 274 U.S. at 224; 23 Wright & Graham, Federal Practice and Procedure: Evidence § 5342 (1980); see also 1A Wright, Federal Practice and Procedure: Criminal § 171 (3d ed. 1999) (discussing the policies underlying Rule 11 as including ensuring the court's

oversight of plea agreements and the prevention of abuse of the plea agreement process). Further, providing some protection for defendants from pleas gone awry fosters plea bargaining by encouraging openness and honesty during plea negotiations. Fed. R. Evid. 410 note. These Rules thus protect important rights and interests, but their protection can be waived by defendants. Mezzanatto, 513 U.S. at 806. The question presented here is whether Newbert's successful motion to withdraw his guilty plea, based on post-plea evidence of actual innocence, constitutes a breach of his plea agreement such that he has waived his Rule 410 and Rule 11(f) rights.

Basic contract principles apply to the construction of plea agreements. Clark, 55 F.3d at 12; Atwood, 963 F.2d at 479. Ambiguities in plea agreements are construed against the government. United States v. Giorgi, 840 F.2d 1022, 1026 (1st Cir. 1988) ("[W]e find that the costs of an unclear agreement must fall upon the government. . . . [W]e hold that the government must shoulder a greater degree of responsibility for lack of clarity in a plea agreement.").[3] In this case, the "under circumstances constituting a breach" clause is clearly ambiguous. The agreement

---

[3] This is not only because ambiguities in contracts are traditionally interpreted against the drafter, Restatement (Second) of Contracts § 206 (1981), but also because plea agreements implicate broader societal interests, some of constitutional magnitude, Giorgi, 840 F.2d at 1026 (citing United States v. Harvey, 791 F.2d 294 (4th Cir. 1986)).

contains no definitions for when the withdrawal of a plea allowed by a court could constitute a breach. The district court aptly noted that the phrase "under circumstances constituting a breach" when applied to successful withdrawals of pleas is also not self-defining. Newbert II, 477 F. Supp. 2d at 291. This clause by its terms does not purport to govern situations where a defendant has violated other terms of a plea agreement, such as a failure to testify or to testify honestly.

The government's construction of the agreement is that the "under circumstances constituting a breach" of the agreement language was meant to exclude situations in which government conduct was the cause of the defendant's successful motion to withdraw the plea, as well as situations in which the government agreed to withdrawal of the plea, such as when new evidence has convinced the government of the defendant's innocence. This argument from the negative makes an inherent assumption that every successful motion to withdraw is a breach unless the government provokes it or agrees to it. The government reads into the clause language which is not there. Taken literally, the government's position would lead to the absurd conclusion that where a court, over the government's opposition, had found a plea not knowing, intelligent, and voluntary and vacated the plea, a defendant could nonetheless be in breach of the agreement and thus deemed to have waived the defendant's Rule 410 right to exclude evidence

-11-

concerning that defective plea. See Mezzanatto, 513 U.S. at 210 (a waiver of a defendant's Rule 410 right will not be enforced if found to be unknowing or involuntary). If the government had such a clear idea of what the breach language did or did not cover, it could have said as much in the agreement itself. Instead, not only does the government fail to acknowledge that it must bear the cost of ambiguities in the plea agreement, it also firmly and incorrectly argues that the ambiguous language should be construed against the defendant. It is the prosecution's locution which is odd.

Thus with unintended irony, the prosecution argues on appeal that the district court read into the agreement language which is not there. It says the court construed the term "under circumstances constituting a breach" to mean "circumstances generated by the defendant, not necessarily agreed to by the government." But the court did not make that construction at all. The court's full statement is instructive: "The question here is what circumstances generated by the defendant, not necessarily agreed to by the government, should not be considered a breach." Newbert II, 477 F. Supp. 2d at 292. The court was responding to the one-sided interpretation of the government, noting that the government could not be the sole arbiter of when a judicially sanctioned withdrawal would or would not constitute a breach; "rather, [that decision] must rest with the court," which will

-12-

sometimes be swayed by defendant's arguments even if the government is not.  Id. at 293.

The government argues its construction is mandated by prior case law.  Not so.  In United States v. Swick, 262 F.3d 684 (8th Cir. 2001), and United States v. Young, 223 F.3d 905 (8th Cir. 2000), the Eighth Circuit considered only whether waivers of Rule 410 rights were knowing and voluntary; no claims of actual innocence were raised, nor any questions of interpretation.  In Young, the defendant breached his agreement by absconding before his plea hearing.  223 F.3d at 907.  In Swick, the defendant withdrew his plea apparently without much explanation.  262 F.3d at 686 (noting that the district court "act[ed] out of what appears to us to be an abundance of discretion" in granting the withdrawal motion).  In neither case did the defendants dispute that their actions constituted a breach.  The government also cites to United States v. Molinaro, 11 F.3d 853 (9th Cir. 1993), but again in that case the defendant's withdrawal of his plea was not based on a claim of actual innocence.[4]

The prosecution misreads the district court as having held that every time it is arguable that defendant would not otherwise have entered the plea had he known then what he later

_____

[4]     The court in Molinaro did not discuss the grounds for Molinaro's withdrawal of his guilty plea or explain why this withdrawal constituted a breach under the terms of his agreement. See 11 F.3d at 864.

-13-

knew, then the withdrawal of a plea cannot be a breach of the agreement. That was not the court's holding. The district court enunciated a number of limiting principles on its decision that defendant was not in breach, emphasizing the restrictions it had already employed in deciding whether to permit withdrawal of the plea:

> [T]he defendant must first be successful in his motion to withdraw his guilty plea, a motion fraught with difficulty; the defendant must also demonstrate that the basis of the motion is evidence that he discovered only after he entered his guilty plea, that he could not, acting with due diligence, have discovered the evidence before entering into the guilty plea, that the evidence establishes a plausible basis for concluding that the defendant was not guilty of the crime to which he pleaded guilty, and that the evidence would have materially affected his decision as to whether to plead guilty.

Newbert II, 477 F. Supp. 2d at 294. As the court noted, "[t]hese significant limitations are rarely met, but they happen to be met in this case." Id. It was only as one of several limiting principles that the court noted that Newbert had a credible claim that he would never have entered the plea agreement if he had had the post-plea evidence available at the time he entered the plea.

Moreover, the prosecution's argument spins out from our statement in Clark that the government was in breach of a plea agreement even though the government "would not have made this agreement had it known then what it knows now." 55 F.3d at 113. In that case, the government learned post-plea that the defendant might have obstructed justice, and as a result it effectively

-14-

argued against the sentencing reduction it had promised in the plea agreement not to oppose. There is an important difference between new information suggesting the defendant deserves a stronger sentence and new information suggesting the defendant might actually be innocent.[5] Cf. United States v. Barron, 172 F.3d 1153, 1158 (9th Cir. 1999) ("What is at stake for the defendant is his liberty. . . . What is at stake for the government is its interest in securing just punishment for violation of the law and its interest that an innocent act not be punished at all."). This difference limits the application of contract law principles to plea agreements; the analogy between plea agreements and commercial contracts is not exact, and the parties do not necessarily bear equal obligations. See United States v. Gonzalez-Sanchez, 825 F.2d 572, 578 (1st Cir. 1987) ("Contractual principles apply [to plea agreements] insofar as they are relevant in determining what the government 'owes' the defendant."); United States v. Baldacchino, 762 F.2d 170, 179 (1st Cir. 1985) (same); see also United States v. Harvey, 791 F.2d 294, 300 (4th Cir. 1986) ("[T]he defendant's underlying 'contract' right is constitutionally based and therefore

---

[5]    Newbert's original plea is not dispositive of his guilt. Thore v. Howe, 466 F.3d 173, 185 (1st Cir. 2006) ("[T]here are a number of reasons why a defendant might choose to plead guilty.").

-15-

reflects concerns that differ fundamentally from and run wider than those of commercial contract law.").[6]

The government's underlying quarrel is with the court's decision to allow defendant's motion to withdraw the plea. That issue is not before us, nor could it be. See 18 U.S.C. § 3731 (describing limited circumstances when the government may seek an interlocutory appeal, which do not include withdrawals of pleas). In pressing this dispute here, the prosecution is attempting an end run around the limits of interlocutory appeal.

Indeed, adoption of the government's argument could create undesirable incentives in the system. Cf. Mezzanatto, 513 U.S. at 211 (Ginsburg, J., concurring) ("It may be . . . that a waiver to use [plea-related] statements in the case in chief would more severely undermine a defendant's incentive to negotiate, and thereby inhibit plea bargaining.").

---

[6] The prosecution has another attack, which again fundamentally misapprehends the ruling by the district court. The prosecution argues that the reasons the court gave for allowing the motion to withdraw are irrelevant to whether the defendant is in breach. As a matter of logic, this is nonsensical. The two questions are inherently interrelated. As a matter of basic contract law, it is incorrect. Contracts may fail for a variety of reasons, including mistake, impracticability of performance, and frustration of purpose. Restatement (Second) of Contracts §§ 152, 261, 265 (1981). These contract law principles run parallel to, but are not fully coextensive with, the reasons for which a federal judge may decide that the government or defendant is not in breach of a plea agreement. See, e.g., United States v. Bradley, 381 F.3d 641, 648 (7th Cir. 2004) (invalidating plea agreement based on mutual mistake); United States v. Bunner, 134 F.3d 1000, 1004-05 (10th Cir. 1998) (invalidating plea agreement based on frustration of purpose).

The judgment of the district court is affirmed.

**Concurring opinion follows.**

BOUDIN, **Chief Judge**, concurring.  The plea agreement provided that the defendant "agrees to plead guilty to the indictment" charging him with possessing cocaine with intent to distribute; in exchange the government agreed to recommend a reduced sentence.  So the government perhaps has a plausible argument that the agreement, which was to plead guilty on specific terms and understandings, was breached when the defendant chose-- however legitimately--to withdraw his plea and go to trial.

Yet because of the vague qualifier on the waiver ("under circumstances constituting a breach of this Agreement"), the language is less airtight than it might have been; and ambiguity counts against the drafter who, in this case, has greater bargaining power and more expertise.  Even if the qualifying language was inserted to help the defendant, as the government claims, it muddles the meaning.  So, on a strict reading of the plea language, the interpretation issue can reasonably be resolved against the government.

Policy might at first also suggest that the waiver clause be narrowly construed, tipping the balance decisively against the government.  That the government might use the admissions against the defendant would surely discourage an otherwise proper withdrawal of a guilty plea.  Yet the government has some basis for asking for such a waiver (apart from discouraging withdrawals).  Otherwise, a defendant might claim that information provided in the

-18-

plea agreement tainted evidence that the government had independently derived. Cf. United States v. Poindexter, 951 F.2d 369, 394-95 (D.C. Cir. 1991).[7] But even if policy is neutral, the present language leaves unclear whether it applies to a plea withdrawal approved by the court based on new evidence.

Because the government may well redraft its language, a further point ought to be stressed. Even if the withdrawal motion were plainly a breach of the agreement, the district court would not be required automatically to enforce the waiver. The waiver concerned trial rights--here, the right under Rule 410 to exclude plea discussions and related statements. For good cause, the district court can relieve a defendant of such a waiver--just as it can relieve parties from a stipulation or refuse to honor a plea agreement's waiver of the right to appeal when the waiver would effect a "miscarriage of justice."[8]

In the present circumstances, the district judge thought that the withdrawal of the plea was adequately justified. The defendant had previously conceded that he had possessed and sold cocaine, and admission of these statements would largely have

---

[7]The claim would not necessarily succeed. Rule 410 does not in terms apply to fruits and one circuit has said the fruits doctrine would not apply. See United States v. Rutkowski, 814 F.2d 594, 599 (11th Cir. 1987).

[8]See Am. Honda Motor Co., Inc. v. Richard Lundgren, Inc., 314 F.3d 17, 21 (1st Cir. 2002) (stipulation); United States v. Teeter, 257 F.3d 14, 25-26 (1st Cir. 2001) (waiver of right to appeal).

undercut the utility of the new trial that the court was permitting. And, the waiver clause was less than pellucid. In these circumstances, a refusal to enforce the waiver would arguably have been justified even if "the contract" were read in the government's favor.

Defendants often have second thoughts about guilty pleas, withdrawals impose costs and sometimes seriously prejudice government interests, and the government properly resists promiscuous efforts to disavow such agreements. But a claim of innocence supported by new evidence is not lightly ignored by judges. Where a trial judge has endorsed a plausible motion to withdraw a plea on such a ground, the government--in considering appeal--should consider that the principle established may turn out to be one not much to its liking.