# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 07-3093

———————

United States of America,     *

        Appellee,     *

   *    Appeal from the United States

   v.    *    District Court for the

   *    Northern District of Iowa.

Francisco Marcos Quiroga,    *

   *

        Appellant.    *

———————

Submitted: April 15, 2008
Filed: February 9, 2009

———————

Before MURPHY, COLLOTON, and SHEPHERD, Circuit Judges.

———————

COLLOTON, Circuit Judge.

A grand jury charged Francisco Marcos Quiroga with one count of possession with intent to distribute five grams or more of pure methamphetamine within 1000 feet of a playground, in violation of 21 U.S.C. §§ 841(a)(1) and 860(a). Quiroga pled guilty pursuant to a plea agreement, but the district court[1] later granted his motion to withdraw the plea under Federal Rule of Criminal Procedure 11(d)(2)(B). Quiroga then moved to suppress evidence seized at the time of his arrest, and moved in limine

———————

[1]The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa.

to exclude incriminating statements that he made in the initial plea agreement. After the district court denied these motions, Quiroga entered a conditional plea of guilty, pursuant to Rule 11(a)(2), preserving the right to appeal the district court's adverse rulings on the motion to suppress and the motion in limine. The district court sentenced Quiroga to 292 months' imprisonment. Quiroga appeals the district court's pre-trial rulings and his sentence. We affirm.

## I.

On September 21, 2005, Officers Lane Siefken and Jason Stiles responded to a report of a disturbance at an apartment in Mason City, Iowa. When the officers arrived, they saw Quiroga run behind the apartment building. The officers walked to the back of the apartment and saw Quiroga, Quiroga's live-in girlfriend, Jill Hjelle, and Hjelle's mother. Quiroga explained that he lost his temper during an argument with Hjelle. The officers separated Quiroga and Hjelle and diffused the situation. At that point, Quiroga and Hjelle left the scene in separate vehicles.

As the officers walked back to their car, a neighbor approached and said that when the officers arrived, Quiroga ran to the back of the apartment building and dropped something over the fence. In the area that the neighbor had identified, the officers found a plastic bag containing jewelry, a small quantity of cash, a lighter, and a second clear plastic bag containing a white substance. The officers believed that the white substance was methamphetamine. To confirm their belief, Stiles took his trained canine out of the patrol car and gave the dog an "open area" command to search for drugs. The dog found the plastic bag and indicated that it contained drugs.

Thinking that Quiroga might return, Stiles returned the bag to its original location, and positioned himself so that he would be hidden from someone approaching from the front of the apartment. Three to five minutes later, Quiroga approached the apartment from the back, through a heavily wooded yard, rather than

through the driveway in the front. Realizing that Quiroga would see him, Stiles made his presence known when Quiroga was about fifteen feet from the bag. Quiroga told Stiles that he had come back to the apartment to pick up a speaker. When Stiles asked why he had not parked in the driveway in front, Quiroga did not answer. Stiles placed Quiroga under arrest. During a search incident to arrest, he discovered $3501 on Quiroga's person.

A grand jury charged Quiroga with possession with intent to distribute five grams or more of pure methamphetamine within 1000 feet of a playground. The indictment also gave notice that Quiroga was subject to enhanced punishment under 21 U.S.C. § 841(b) because of a prior conviction for a felony drug offense. *See* 21 U.S.C. § 851; *United States v. Roundtree*, 534 F.3d 876, 881 (8th Cir. 2008). On October 12, 2006, Quiroga signed a written plea agreement with the government. The parties agreed that Quiroga's base offense level under the advisory guidelines would be 26, that he would receive a two-level adjustment for distribution of methamphetamine within 1000 feet of a playground, and that he would qualify for a two-level downward adjustment for acceptance of responsibility, but reached no agreement as to the ultimate sentence that would be imposed. Quiroga further agreed that he would "have no right to withdraw his guilty plea if the sentence imposed is other than he hoped for or anticipated."

Quiroga entered a plea of guilty, which the district court accepted based on the report and recommendation of a magistrate judge. Two months later, Quiroga filed a motion to withdraw his plea, arguing that his counsel incorrectly advised him that he could not be sentenced as a career offender under USSG § 4B1.1. The district court initially denied the motion, but on reconsideration, allowed Quiroga to withdraw his plea. *United States v. Marcos-Quiroga*, 478 F. Supp. 2d 1114, 1144 (N.D. Iowa 2007). The court found that "Marcos-Quiroga's decision to plead guilty to the offense charged in this case was based upon his counsel's assurance that he was not a career offender . . . and that, but for his counsel's advice, Marcos-Quiroga would not have

pleaded guilty to the offense charged in this case." *Id.* at 1118. On this basis, the court concluded that Quiroga had received ineffective assistance of counsel and had established a fair and just reason to withdraw his plea.

After withdrawing his guilty plea, Quiroga filed a motion to suppress the currency found on his person after his arrest, arguing that the officers lacked probable cause to arrest him. The district court denied this motion. Quiroga also filed a motion in limine, urging the court to exclude any evidence regarding the initial plea agreement and his withdrawn guilty plea. Quiroga relied on Federal Rule of Evidence 410, which makes inadmissible certain pleas, plea discussions, and related statements. The district court denied the motion on the ground that Quiroga had waived his rights under Rule 410 in the original plea agreement.

Quiroga then entered a conditional guilty plea, which the district court accepted. The district court found that Quiroga was subject to the career offender guideline and sentenced him to 292 months' imprisonment, at the bottom of the advisory guideline range.

II.

Quiroga first challenges the denial of his motion to suppress the currency found on his person when he was arrested, on the ground that the officers lacked probable cause to arrest him. We review *de novo* the district court's conclusion that there was probable cause to arrest, and the underlying factual determinations for clear error. *Ornelas v. United States*, 517 U.S. 690, 699 (1996). "An officer has probable cause to make a warrantless arrest when the facts and circumstances are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *United States v. Torres-Lona*, 491 F.3d 750, 755 (8th Cir. 2007). We consider "the totality of the circumstances as set forth in the information available to

the officers at the time of arrest." *United States v. Kelly*, 329 F.3d 624, 628 (8th Cir. 2003).

We conclude that the officers had probable cause to arrest Quiroga. When the officers arrived at the apartment, they saw Quiroga running in the vicinity where the officers later found the drugs. A neighbor told the officers that Quiroga had dropped a bag in that same area. This evidence, together with Quiroga's suspicious return to the scene a short time later from a heavily wooded area behind the apartment, is sufficient to lead a reasonably prudent person to believe that the bag containing methamphetamine was Quiroga's. Quiroga claims that he returned to the apartment from the rear in order to avoid a confrontation with his girlfriend, but reasonable officers were entitled to draw a different inference. Accordingly, we conclude there was probable cause for the arrest, and the district court correctly denied the motion to suppress.

III.

Quiroga next argues that the district court erroneously denied his motion in limine to exclude evidence relating to his previously withdrawn plea agreement. The plea agreement included a stipulation of facts that acknowledged Quiroga's knowing possession of the bag containing methamphetamine and his intent to distribute some or all of the drugs to another person. Quiroga contends that Federal Rule of Evidence 410 makes this evidence inadmissible.

Under Rule 410, statements made in the course of plea negotiations are inadmissible against the defendant. This right of the defendant, however, is waivable by agreement, unless there is "some affirmative indication that the agreement was entered into unknowingly or involuntarily." *United States v. Young*, 223 F.3d 905, 909-10 (8th Cir. 2000) (quoting *United States v. Mezzanatto*, 513 U.S. 196, 210 (1995)). Quiroga's original plea agreement contained a provision stating:

> If the defendant violates **any** term or condition of this plea agreement, in **any** respect, the entire agreement will be deemed to have been breached . . . . If the defendant does breach this agreement, he faces the following consequences: (1) *all testimony and other information he has provided at any time to attorneys, employees or law enforcement officers of the government, to the court, or to the federal grand jury, may and will be used against him in any prosecution or proceeding . . . .*

(App. 5-6) (boldface in original; italicization added). The parties agree that the italicized language, if enforceable, constitutes a waiver of Quiroga's rights under Rule 410.

One term of the plea agreement was that Quiroga would plead guilty to the indictment. (App. 1). The district court concluded that Quiroga breached this term when he moved to withdraw his guilty plea, and Quiroga does not dispute this point.[2] Quiroga contends, however, that because his attorney gave incorrect advice that he would not be classified as a career offender under the advisory guidelines, he did not knowingly and voluntarily enter into the plea agreement or execute the waiver contained within the agreement. Whether Quiroga knowingly and voluntarily waived

---

[2]The district court reasoned that it was "constrained" to reach this conclusion by an "apparent assumption" of this court in *United States v. Swick*, 262 F.3d 684 (8th Cir. 2001), that "moving to withdraw a guilty plea is a breach of a plea agreement." *United States v. Marcos-Quiroga*, No. CR 06-3009-MWB, 2007 WL 1724898, at *9 n.3 (N.D. Iowa June 12, 2007). Whether the district court was in fact so constrained is debatable, given that the opinion in *Swick*, 262 F.3d at 686-87, addressed only whether the defendant's waiver of rights under Rule 410 was knowing and voluntary. *See Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, 1288 (9th Cir. 1985) ("[U]nstated assumptions on non-litigated issues are not precedential holdings binding future decisions."); *cf. United States v. Newbert*, 504 F.3d 180, 185-88 (1st Cir. 2008) (addressing whether a motion to withdraw a guilty plea breached a plea agreement worded differently than the agreement in this case); *id.* at 188-89 (Boudin, C.J., concurring). As noted, however, Quiroga does not raise this point on appeal.

rights in his plea agreement is a legal question that we review *de novo*. *Swick*, 262 F.3d at 686; *Young*, 223 F.3d at 909.

Quiroga's argument, in summary, is that his attorney advised him incorrectly that he would not be subject to the career offender guideline, that Quiroga relied on this advice in signing the plea agreement that contained the waiver, and that his agreement to waive rights under Rule 410 was therefore not knowing and voluntary. This contention founders on abundant circuit precedent holding that inaccurate advice of counsel about the sentencing guidelines or likely punishment does not render involuntary a defendant's decision to plead guilty, so long as the defendant is informed of the maximum possible sentence permitted by statute and the court's ability to sentence within that range. In *United States v. Granados*, 168 F.3d 343 (8th Cir. 1999) (per curiam), for example, this court stated that "a defendant's reliance on an attorney's mistaken impression about the length of sentence is insufficient to render a plea involuntary as long as the court informed the defendant of his maximum possible sentence." *Id*. at 345. Several other decisions are to the same effect. *United States v. Gomez*, 326 F.3d 971, 975 (8th Cir. 2003) (rejecting a defendant's contention that a guilty plea was not "knowing and voluntary" where counsel did not advise him that he would be sentenced as a career offender, because, *inter alia*, "the sentencing stipulations in the plea agreement were clearly stated to be non-binding on the sentencing court"); *United States v. Spears*, 235 F.3d 1150, 1152 (8th Cir. 2001) (holding that a defendant's guilty plea was "knowing and voluntary," despite "any confusion about how he would fare under the Sentencing Guidelines"); *United States v. Bond*, 135 F.3d 1247, 1248 (8th Cir. 1998) (per curiam) ("A defense counsel's erroneous estimate of a guidelines sentence does not render an otherwise voluntary plea involuntary."); *Roberson v. United States*, 901 F.2d 1475, 1478 (8th Cir. 1990) (holding that a defendant's reliance on defense counsel's erroneous prediction that he would receive a more lenient sentence if he pled guilty did not make his plea involuntary, where the defendant was fully informed of the maximum sentence on each count); *Hollis v. United States*, 687 F.2d 257, 260 (8th Cir. 1982) (rejecting a

defendant's claim that his plea was involuntary, as "[t]he rule is clear that a defendant cannot set aside a guilty plea merely because he relied on his attorney's opinion that the sentence would be a lenient one"); *see also United States v. Silva*, 430 F.3d 1096, 1100 (10th Cir. 2005) (rejecting a defendant's contention that his guilty plea was involuntary and unknowing due to his attorney's erroneous advice about the likely sentencing range under the guidelines, because the defendant "expressly indicated he was fully aware that the prosecution had declined to agree that a specific sentence was the appropriate disposition in his case, and that he faced a maximum term of twenty years imprisonment at sentencing"). That the sentencing guidelines are now merely advisory, and thus less likely to determine the ultimate sentence than when they were mandatory, only strengthens the force of these precedents. If a guilty plea is knowing and voluntary notwithstanding counsel's erroneous advice about the sentencing guidelines, we see no reason why a waiver of rights in a plea agreement would not also be knowing and voluntary despite such mistaken guidance.

The plea agreement signed by Quiroga specified the statutory penalties for the offense to which he agreed to plead guilty: a term of imprisonment of at least ten years and up to life without the possibility of parole, a fine of $8 million, or both; a special assessment of $100; and a period of supervised release of at least eight years and up to life. (App. 1). The agreement further provided that while "the parties may have discussed how various factors could impact the court's sentencing decision and the determination of the advisory sentencing guidelines range," the parties agreed that "discussions did not result in any express or implied promise or guarantee concerning the actual sentence to be imposed by the court." (App. 3). The agreement also said that the defendant "understands that he will have no right to withdraw his guilty plea if the sentence imposed is other than he hoped for or anticipated." (*Id.*). Quiroga signed the agreement and initialed each paragraph to indicate his understanding. These admonitions were sufficient to advise Quiroga that his plea agreement and the contemplated guilty plea could result in a sentence ranging up to the statutory maximum term of life imprisonment. Under our precedents, Quiroga's

-8-

misunderstanding about the application of the career offender guideline did not render the plea agreement and its waiver of rights under Rule 410 unknowing or involuntary.

In support of his contention that the waiver of rights under Rule 410 was not knowing and voluntary, Quiroga relies on the district court's prior decision to grant his motion to withdraw the guilty plea. The district court's opinion on that matter concluded that Quiroga received ineffective assistance of counsel in connection with the plea, and stated that inaccurate advice about the impact of criminal history "may render a guilty plea neither knowing nor voluntary." *Marcos-Quiroga*, 478 F. Supp. 2d at 1136. In its ruling on the motion in limine, the district court amplified its view that counsel's erroneous advice about the sentencing guidelines "infected the knowingness and voluntariness" of Quiroga's guilty plea. *Marcos-Quiroga*, 2007 WL 1724898, at *9.

Quiroga argues that the rationale of the district court's decision allowing him to withdraw his guilty plea is inconsistent with the district court's ruling on the motion in limine, because if counsel's bad advice rendered his guilty plea unknowing and involuntary, then it also rendered his decision to enter into the antecedent plea agreement (and the attendant Rule 410 waiver) unknowing and involuntary.[3] It makes

[3]The district court explained its decision on the motion in limine as follows:

The court cannot find that there is any real question as to whether Marcos-Quiroga's waiver of the protections of Rule 410 in his plea agreement was knowing and voluntary or that he later breached that plea agreement by withdrawing his guilty plea. In allowing Marcos-Quiroga to withdraw his guilty plea, the court found that his guilty plea was not "knowing" or "voluntary" only to the extent that he was not provided by counsel with a realistic understanding of the relative risks of pleading guilty or going to trial, where counsel failed to advise him correctly about his exposure to a sentencing enhancement as a career criminal. The court did not find or suggest that counsel's advice concerning the effect of provisions of the plea agreement, such as the waiver of Rule

no sense, Quiroga submits, to conclude that while he *un*knowingly and *in*voluntarily agreed to plead guilty based on mistaken advice about sentencing, he also knowingly and voluntarily agreed at the same time to a Rule 410 waiver that would effectively preclude him from proceeding to trial if he later realized that his plea was unknowing and involuntary. *Cf. Chesney v. United States*, 367 F.3d 1055, 1058-59 (8th Cir. 2004). Be that as it may, we are not bound to reconcile the district court's orders. The order granting Quiroga's motion to withdraw his guilty plea was an interlocutory step in the proceedings that was not appealable by the government. *United States v. Martin*, 611 F.2d 260, 261 (9th Cir. 1979); *United States v. Shapiro*, 222 F.2d 836, 838 (7th Cir. 1955); 15B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3919.7, at 713 & n.12 (2d ed. 1991). As such, it did not become law of the case that must conform to a holding that Quiroga's waiver of rights in the plea agreement was knowing and voluntary. *See Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.*, 48 F.3d 1066, 1070 (8th Cir. 1995); 18B Wright, Miller & Cooper, *supra*, § 4478.6, at 829. For the reasons stated, we conclude that Quiroga's waiver of his rights under Rule 410 was knowing and voluntary, and that the district court properly denied the motion in limine to exclude statements made by Quiroga in the plea agreement.

410 rights, resulted in a plea that was not knowing or voluntary. . . . To put it another way, the court cannot find that prior counsel's error, which infected the knowingness and voluntariness of Marcos-Quiroga's guilty plea, also infected the knowingness and voluntariness of Marcos-Quiroga's waiver of Rule 410 rights under the plea agreement.

*Marcos-Quiroga*, 2007 WL 1724898, at *9 (citations omitted).

IV.

Quiroga raises two challenges to his sentence. First, he contends that the district court erred by classifying him as a career offender under USSG § 4B1.1, because he had not sustained two prior felony convictions for a crime of violence or controlled substance offense. Specifically, he contends that his conviction for assault with intent to commit sexual abuse under Iowa Code § 709.11 should not have been counted as a felony crime of violence. He notes that the offense is an aggravated misdemeanor under Iowa law, and asserts that the victim of the assault suffered no injury.

In considering whether Quiroga's prior assault conviction was a qualifying felony conviction under § 4B1.2, the district court reasoned as follows:

> Pursuant to Iowa Code § 709.11, any person who commits an assault with intent to commit sexual abuse, but no injury results, is guilty of an aggravated misdemeanor. Pursuant to Iowa Code § 903.1(2), a person convicted of an aggravated misdemeanor for which no specific penalty is provided faces a maximum penalty of imprisonment not to exceed two years. Thus, this offense qualified as a "felony" under the guidelines. Moreover, the application notes to U.S.S.G. § 4B1.2 expressly state that, for purposes of the career offender guideline, "crime of violence" includes, *inter alia*, aggravated assault and forcible sex offenses. U.S.S.G. § 4B1.2, n.1. Thus, there is no doubt that Marcos-Quiroga's prior conviction for assault with intent to commit sexual abuse, albeit designated a misdemeanor under Iowa law, is a qualifying offense for career offender status under § 4B1.1.

*Marcos-Quiroga*, 478 F. Supp. 2d at 1124. We agree with this analysis, and therefore reject Quiroga's challenge to the district court's conclusion that he was a career offender.

-11-

Quiroga also asserts that the district court impermissibly "double-counted" his prior Iowa conviction for delivery of a controlled substance, because the conviction served to increase the statutory penalties for the instant offense, pursuant to 21 U.S.C. §§ 841(b) and 851, and also to classify him as a career offender pursuant to USSG § 4B1.1. Several courts have rejected comparable contentions, on the view that double enhancement is not forbidden by the Constitution as long as it is intended by the Legislature, and, in any event, there is no double enhancement where the sentencing guidelines merely establish a range of punishment within the range of penalties authorized by statute. *United States v. Moralez*, 964 F.2d 677, 682-83 (7th Cir. 1992); *United States v. Amis*, 926 F.2d 328, 330 (3d Cir. 1991); *United States v. Sanchez-Lopez*, 879 F.2d 541, 559 (9th Cir. 1989).

Quiroga seeks to distinguish these cases by relying on recent Sixth Amendment jurisprudence, including the decision in *Cunningham v. California*, 549 U.S. 270 (2007). There, in a case involving California's sentencing system, the Court stated that "[a] fact underlying an enhancement cannot do double duty; it cannot be used to impose an upper term sentence and, on top of that, an enhanced term." *Id.* at 281. The text at issue, however, was a description of the California Penal Code; the statement was even followed by a citation to Penal Code § 1170(b). *Id.* The passage cited by Quiroga did not purport to establish a constitutional requirement. Now that the federal sentencing guidelines are advisory, factual findings by the district court that increase the advisory offense level do not violate the Sixth Amendment. *United States v. Brave Thunder*, 445 F.3d 1062, 1065 (8th Cir. 2006). In this case, moreover, the enhancements were based on findings about Quiroga's prior convictions, and thus did not implicate the Sixth Amendment. *Almendarez-Torres v. United States*, 523 U.S. 224, 239-47 (1998). For these reasons, we discern no legal error in the district court's imposition of sentence.

\*　　\*　　\*

-12-

The judgment of the district court is affirmed.

_____