**Crystal Antoinette HARRIS,**
**Movant/Petitioner,**

v.

**UNITED STATES of America,**
**Respondent.**

No. 4:08–cv–00164–RP.

United States District Court,
S.D. Iowa,
Central Division.

March 31, 2010.

Donna M. Schauer, Schauer Law Office, Adel, IA, for Movant/Petitioner.

Clifford R. Cronk, U.S. Attorney's Office, Davenport, IA, Gary L. Hayward, Richard E. Rothrock, United States Attorney's Office, Des Moines, IA, for Respondent.

## ORDER

ROBERT W. PRATT, Chief Judge.

Crystal Antoinette Harris moves to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255, and the court has taken judicial notice of the proceedings in her criminal case, *United States v. Harris*, 3:04–cr–00021–RP (S.D.Iowa). For the following reasons, the court grants the motion.

## BACKGROUND

Harris originally was charged with distributing cocaine base on four occasions. The total amount of drugs identified in the four distributions was about 7.5 grams of cocaine base. In a superseding indictment

filed in July 2004, the grand jury included special findings that Harris was responsible for 500 grams or more, but less that 1.5 kilograms, of cocaine base. Trial against her began on August 29, 2005, and a jury was chosen. Before opening statements were made, the court recessed trial so that Harris could discuss whether she wanted to continue with trial or plead guilty to the charges without a plea agreement. After 4:00 p.m. that day, Harris entered open guilty pleas to the four counts. As part of the plea proceeding, the government agreed to drop the special findings regarding drug amounts. Later, when the presentence investigation report indicated she was responsible for 315.39 grams of cocaine base, she objected, arguing that her plea supported only about 7.5 grams, the amount attributable in the four distribution counts. (PSR Harris Obj. ¶ 5.) At sentencing, Harris again argued she could not be held responsible for any drug amounts beyond those she distributed according to the indictment. The court rejected the argument, finding her "relevant conduct" under the guidelines included at least 150 grams of cocaine base. The court sentenced her to 151[1] months in prison and 3 years of supervised release. Harris appealed, and the United States Court of Appeals for the Eighth Circuit affirmed. *United States v. Harris,* 233 Fed.Appx. 584 (8th Cir.2007). This section 2255 motion followed.

The court rejected on initial review Harris's § 2255 claim that she had a right to the same judge at sentencing as the one who took her guilty plea, and that her lawyer should have raised such an objection. Counsel was appointed to represent Harris and filed a brief in support of the motion on remaining claims that Harris's trial counsel provided ineffective assistance by: (1) not knowing that witnesses could be called and cross-examined at sentencing, (2) not knowing that "relevant conduct" from a presentence report could be used at sentencing, and (3) failing to object to admission of the Jilisha Walton affidavit at sentencing. Harris further argued that her appellate counsel was ineffective for not raising these grounds and for not arguing that she was punished twice when a 2003 state charge was considered in her relevant conduct and in her criminal history.

On January 25, 2010, the court held a hearing on Harris's motion. In addition to the criminal case record, the court accepted Harris's testimony and evidence of Harris's Johnson County, Iowa, criminal proceedings in *State v. Harris,* No. FECR 065314 and *State v. Harris,* No. FECR 062783. The government intended to call Harris's former counsel as a witness, but her former counsel did not appear for the hearing. No testimony or offer of proof has been made as to what counsel would have said. The court now makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

The court finds credible Harris's testimony at the § 2255 hearing that she was offered an agreement to plead guilty to 100 grams of cocaine base in exchange for a 10–year sentence, but she rejected that offer because her lawyer said that she could instead plead to just the four counts charged in the indictment and be held responsible for only about 7.5 grams of cocaine base. Harris was willing to plead guilty to the approximately 7.5 grams of cocaine base. This unusual perspective stems from her lawyer's misunderstanding about the role of "relevant conduct" under

---

**1.** The court subsequently reduced Harris's imprisonment to 121 months pursuant to retroactive application of the "crack" cocaine guideline amendments. *United States v. Harris,* No. 3:04–cr–00021–RP (S.D.Iowa Oct. 1, 2008), Clerk's No. 87.

the guidelines in determining her sentence. Counsel's statements at the plea demonstrate he did not understand this fundamental provision in the guidelines. Unfortunately, the court did not clarify this misunderstanding at the plea proceeding. Counsel's misunderstanding persisted, as evidenced by his objections to the presentence report, his comments at sentencing, and his arguments on direct appeal. By rejecting the offered agreement, Harris eventually was held responsible for at least 150 grams of cocaine base, and she was sentenced to 151 months in prison. If Harris had understood her full sentencing exposure when offered the agreement, the court is convinced she would have taken the plea offer and received a lesser sentence. The court makes more detailed observations below.

2. On June 24, 2004, the Supreme Court decided *Blakely v. Washington*, 542 U.S. 296, 303, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), which held, "the 'statutory maximum' for *Apprendi* [*v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)] purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Just weeks later, the Seventh Circuit considered *Booker* and the issue spurred by *Blakely*. *See United States v. Booker*, 375 F.3d 508, 510 (7th Cir.2004) (argued July 6, 2004, decided July 9, 2004) ("We have expedited our decision in an effort to provide some guidance to the district judges (and our own court's staff), who are faced with an avalanche of motions for resentencing in the light of [*Blakely*], which has cast a long shadow over the federal sentencing guidelines. We cannot of course provide definitive guidance; only the Court and Congress can do that; our hope is that an early opinion will help speed the issue to a definitive resolution."), *cert. granted*, 542 U.S. 956, 125 S.Ct. 11, 159 L.Ed.2d 838 (2004), *aff'd and remanded*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

3. When *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), was issued on January 12, 2005, the Supreme Court remedied the potential Sixth Amendment violations in a mandatory guidelines

## The Indictment

At the time the superseding indictment was delivered, in July 2004, courts were sensitive to the question whether, under the Sixth Amendment, juries were required to make all findings of fact regarding drug amounts.[2] It is not surprising, therefore, that the government sought to add special findings in the indictment. By the time of Harris's trial and the plea, in August 2005, the question had been decided, and the special findings in the indictment were no longer required under the Sixth Amendment.[3]

## The Plea Proceeding

By the time Harris pleaded guilty, drug amounts did not have to be alleged in the indictment and proved beyond a reasonable doubt unless they were to establish a sentence for her beyond the twenty-year

scheme by making the guidelines advisory. *Id.* at 259, 125 S.Ct. 738. The Court's ruling did not mandate that a jury find all drug amounts beyond a reasonable doubt or that a jury determine the drug amounts relevant to the guidelines. *Id.* Instead, as the Court of Appeals for the Eighth Circuit explained four months before Harris pleaded guilty, after *Booker*, district courts could determine sentence-enhancing facts under the advisory guidelines by only a preponderance of the evidence. *United States v. Pirani*, 406 F.3d 543, 551 n. 4 (8th Cir.2005) (en banc), *cert. denied*, 546 U.S. 909, 126 S.Ct. 266, 163 L.Ed.2d 239 (2005); *see also United States v. Haack*, 403 F.3d 997, 1003 (8th Cir.2005) ("In determining the appropriate guidelines sentencing range to be considered as a factor under [18 U.S.C.] § 3553(a), we see nothing in *Booker* that would require the court to determine the sentence in any manner other than the way the sentence would have been determined pre-*Booker*."). The district court's factfinding duty included "relevant conduct" under U.S.S.G. § 1B1.3. Consequently, under the advisory sentencing scheme in place after *Booker*, it was no longer necessary to include special findings in the indictment and by the jury except for those that set the statutory maximum.

statutory maximum. In determining her guideline sentence, the court needed to include "[t]ypes and quantities of drugs not specified in the count of conviction" if they were relevant conduct. *See* U.S.S.G. § 2D1.1(c) & comment. (n. 12). "Relevant conduct" means "all acts and omissions [of the defendant] that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2) & comment. (backg'd.) Factors the court would consider in making this determination included the similarity, regularity, and temporal proximity of the charged and uncharged conduct. *See* U.S.S.G. § 1B1.3, comment. (n. 9).

The statements by Harris's counsel at the plea proceeding suggest that counsel did not understand the relevant maximum penalty and the operation of "relevant conduct" in the sentencing guidelines under *Booker*. Counsel tried to limit the evidence before the court to only that in the four counts in the indictment. For example, immediately after Harris entered her guilty pleas, counsel asked to strike the special findings at the end of the indictment. (Plea Tr. 4–5.) Of course, by then, the special findings were surplusage, and the court's comment to the prosecutor reflects it, "I think you agreed those can be stricken in light of the present law?" (Plea Tr. 5.) In addition, when the prosecutor asked Harris questions to create a factual basis for the plea that involved payment on "previous drug debt" to that alleged in the indictment, Harris's counsel objected to it as irrelevant. (Plea Tr. 8.) These statements, alone, may not be sufficient to demonstrate that counsel did not adequately advise Harris. They do, however, corroborate the misunderstanding that became evident at sentencing and on appeal.

Unfortunately, the court did not clarify the misunderstanding at the plea proceeding. The court did ensure that Harris knew there was no mandatory minimum and there was a twenty-year statutory maximum. (Plea Tr. 11.) The court also questioned Harris as to whether anyone promised her what the sentence would be or threatened or forced her to plead guilty. (Plea Tr. 15–17.) At the end of plea colloquy, the court stated:

> Based on her responses to question of Court and counsel, I find that her plea is made voluntarily to all four counts. It is not the result of force, threats or promises. She's aware of her maximum punishment. She's also aware of her jury trial rights and voluntarily waives continuing with her trial, and there is a factual basis for her plea to each count. I therefore accept her plea of guilty to Counts I, II, III, and IV, and order the preparation of a presentence report.

(Plea Tr. 17.) What is missing from the colloquy, however, is the court's discussion with Harris regarding its obligation to apply the sentencing guidelines and its discretion to depart from the guidelines under some circumstances. *See* Fed. R.Crim.P. 11(b)(1)(M). Under Rule 11, the court must inform the defendant and ensure she understands the court's obligation to apply the guidelines. The court did not do so. The court also did not advise Harris she could receive a harsher sentence than she anticipated but would not be able to withdraw her plea in that event.

### The PSR and Sentencing

The objections Harris's counsel made to the PSR also suggest counsel did not understand the application of "relevant conduct" under U.S. S.G. § 1B1.3. Counsel repeatedly objected to incidents included in the PSR because they were not alleged in the indictment and therefore were not part of the "offense conduct." (Def.'s Obj., Clerk's No. 65 at 22–24.) The Probation

Officer responded that the amounts were calculated as "relevant conduct" under § 1B1.3.

At sentencing, Harris's counsel again took up the issue, stating, "we certainly had discussions all afternoon [on the day of the plea] about the matter and that the issue with respect to the quantity came up. I made a motion after those discussions, and it was restricted...." (Sent. Tr. 6.) The following discussion at sentencing then ensued:

> MR. CRONK: What happened in this case is, Your Honor, the indictment came down before *Booker* in that window when we were indicting and including allegations that applied under the sentencing guidelines. So, for instance, I believe in this case there was a superseding indictment that alleged, as an aggravating factor, that this defendant was responsible for 500 grams or more of crack cocaine. At the time she pled, Mr. Reed moved to strike that, and, of course, Judge Longstaff did not require that she make admissions relevant to that aggravating factor. That, I don't think, was really a subject of negotiation. That was simply what the law is at the time.
>
> THE COURT: Right. So the Government was trying to comply with *Blakely* at the time, which said you've got to prove up—or at least the Government's position was that they had to prove up an aggravating factor; i.e., drug amounts?
>
> MR. CRONK: Yes.
>
> THE COURT: Okay.
>
> MR. CRONK: That's why the allegation of 500 grams was in the indictment.

(Sent. Tr. 6–7.) When the government attempted to present witnesses to support the amount of drugs attributable to Harris in the PSR, her counsel objected because "there is no fact-finder to find those issues beyond a reasonable doubt. I think that's what the *Booker* case and the other cases require." (Sent. Tr. 12.) The court responded:

> THE COURT: Mr. Reed, here's the way I read the law, and then I'll talk about the facts here. My understanding is at sentencing the burden on the Government is only preponderance.
>
> MR. REED: Your Honor, I believe *Booker*, because this sentence is an element of the offense, would require proof beyond a reasonable doubt as to those quantities. I mean, I just got a case remanded from the Eighth Circuit on that same issue where the Judge based the quantity based upon an unproven amount. And the case was United States versus Roberson, out of the United States District Court in Minneapolis. Mr. Roberson went to trial. In the trial the only amounts proven were, quote, an amount in excess of 50 grams. At the time of sentencing, the Judge took into consideration a larger amount, and the case was remanded for sentencing based on that.

(Sent. Tr. 12–13.) In fact, the Court of Appeals in *United States v. Roberson*, 439 F.3d 934, 934 (8th Cir.2006), did not remand case for sentencing based on only 50 grams of drugs. The Court of Appeals remanded the case because the district court mistakenly thought the guidelines were mandatory. *Id.* The court pointed this out to counsel later in the sentencing proceeding, and counsel persisted in his misunderstanding:

> THE COURT: Mr. Reed, I found United States versus Roberson, 439 Federal 3d 934. Burden of proof at sentencing was not at issue in that case.
>
> MR. REED: Your Honor, the case— one of the issues with respect to the appeal was the drug quantity, and, as you may see as you read, the Court sentenced him for 18—

THE COURT: Right.

MR. REED:—ounces when the jury only made a determination as to the 50—

THE COURT: Right. It was remanded—The way I understand the facts, it was remanded because the District Court considered the guidelines mandatory. That's the holding of the case.

MR. REED: Well, in the other aspect of it would have to be—Well, I guess I read a little differently, Your Honor.

(Sent. Tr. 50.)[4] The court and the prosecutor were in agreement:

MR. CRONK: Well, I don't know the Roberson case. I would be very surprised if, in the last few days, the Eighth Circuit has overturned *Booker*. *Booker* says that guideline calculations are to be proven—aggravating specific offense characteristics, that type of information, has to be proved by a preponderance of the evidence. The mandatory minimum amounts, such as 50 grams, have to be proven to a jury beyond a reasonable doubt.

THE COURT: Right.

MR. CRONK: I don't think we're in any sort of constitutional violation if we go forward with the evidence and the Court finds, by a preponderance, those amounts.

THE COURT: Mr. Reed, in fact, my reading of the cases, there have been a number of times that defendants from District Courts have appealed in our circuit saying that the Judge had to make a beyond a reasonable doubt finding, and the Court of Appeals has consistently said in an advisory guideline system the burden on the Government is only preponderance. That's my reading of the cases, but you certainly have your error.

(Sent. Tr. 14.)

After presentation of evidence, the government asked the court to find Harris responsible for 500 grams or more of cocaine base. (Sent. Tr. 91.) Harris's counsel responded:

"[O]bviously, the relevant provision in this case is—I believe it's 1B1.3, relevant conduct. And for the life of me, I guess I could not find a provision that would be applicable that would allow the testimony that was offered here today to be considered by the Court in determining a sentence, and I will tell the Court why.

(Sent. Tr. 91.) Counsel went on to explain that the indictment alleged four distinct incidents on specific dates, not a conspiracy, and testimony presented at sentencing was irrelevant to those specific dates. Referring to his motion to strike the special findings in the indictment, he told the court:

I mean, this indictment alleges that there were acts that occurred on four specific dates, and during the course of the preparation for the trial, I was at a loss to find information related to 500 to 1.5 kilograms, and so I brought the motion, and the motion was granted because the State could not prove—the Government could not prove beyond a reasonable doubt that this case involved 500 to 1.5 kilograms. And now, after that language was stricken, the Government seeks to have this Court, I would argue, or maybe it's not a correct word, but back-door the defendant by once again adding language relevant to mat-

---

**4.** On further appeal after remand, the Court of Appeals rejected the defendant's argument that his sentence had to be based on only amounts found by the jury. *United States v. Roberson*, 517 F.3d 990, 993 (8th Cir.2008).

It held, "Under the now-advisory guidelines, a district court may still find its own facts that enhance the base offense level of the guidelines range, so long as the statutory maximum is not surpassed." *Id.*

ters that have already been dismissed and to do—asking the Court to do so under 1B1.3(b), if I'm saying that correctly.

(Sent. Tr. 92.) Counsel reiterated, "Again this is not a conspiracy, and I would submit that 1B1.3, the language in that guideline provision, does not apply." (Sent. Tr. 93.) Counsel persisted:

[MR. REED:] I would ask that the Court, based upon 1B1.3, consider only the amounts for which Ms. Harris pleaded in the indictment.

THE COURT: Mr. Reed—

MR. REED: Yes.

THE COURT:—how quick do you think the Court of Appeals would reverse me if I did that?

Here's what it says: "All acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." My understanding of the law, and maybe I've missed it here, even acquitted conduct can be considered by the sentencing Court.

(Sent. Tr. 96.) The Court quoted to counsel applicable caselaw holding that relevant conduct can include conduct not alleged in the indictment, but counsel would not accept it:

[THE COURT:] Here's what I'm reading from the Court of Appeals.

MR. REED: Uh-huh.

THE COURT: "The District Court did not clearly err in finding that the 11 other transactions were relevant conduct under the U.S. Sentencing Guidelines manual 1B1.3(a) (1995). See United States versus Ballew," B-a-l-l-e-w, 40 Federal 3d 936, page 943, Eighth Circuit (standard of review) cert. denied, et cetera, et cetera. "The guidelines provide that the base offense level shall be determined on the basis of . . . . all acts and omissions . . . that were part of the same course of conduct or common

scheme or plan." This is absent an allegation or an indictment of conspiracy.

MR. REED: Well, I guess the key word is what you just read there, Your Honor, was "clearly" err, and so that tells me that had the Court gone the other way that at least the Court would have some discretion to do that. And if this Court found in all fairness—

THE COURT: No. Here's—I want to make sure that you have a sufficient record.

MR. REED: Uh-huh.

THE COURT: My record is I have to take into account all of the conduct that the defendant engaged in, not just the four specific allegations that are contained in the grand jury's indictment. And I'm sure if I'm wrong on that, counsel for the Government has an equal obligation, as you do, to tell me that I'm wrong on the law.

MR. REED: Well, Your Honor, I guess this—when you say consider the conduct, I mean, that's—the way the Court stated it is certainly broad and suggested that anything that the defendant ever did could be included, and I would submit that that's not what the law says.

(Sent. Tr. 98–99.)

Finally, counsel for Harris argued it would be unfair for the court to hold her responsible for additional quantities beyond the indictment, and he represented to the court that if they had known she would be held responsible for additional relevant conduct beyond the indictment, she might have gone to trial:

I mean, one of the reasons that we went ahead and entered a plea in this case was because we were pleading to the four charges and the one point-that last special finding was dismissed. And, now, you know, had we understood that prior conduct from nine months prior to could have been considered, then, you

know, we might as well have gone and had a trial in front of a jury, let a jury make a determination of proof beyond a reasonable doubt on that subject.

(Sent. Tr. 100–01.) Based on the evidence presented, the court found Harris responsible for at least 150 grams of cocaine base by a preponderance of the evidence, and sentenced her at the bottom of the guideline range, 151 months. (Sent. Tr. 113, 116.) Harris appealed.

### The Appeal

The appellate opinion again demonstrates that her counsel still did not understand the application of *Booker* or the guidelines calculations. The Court of Appeals held:

> Regarding the *Booker*-related arguments, counsel for Harris misconstrues the procedural framework for sentencing post-*Booker*. It is now well established that the court is to make factual findings necessary for advisory Guidelines calculations, these findings are to be made using the preponderance of the evidence standard, and the sentencing court is to use the advisory Guidelines range as one of the sentencing factors under 18 U.S.C. § 3553(a).... Counsel for Harris ignores the remedial provisions of the Court's *Booker* opinion and all of our precedent following *Booker* which establishes this framework. Counsel insists, instead, that *Booker* requires a jury to make all findings relevant to the Guidelines. Because we have repeatedly addressed this basic misconception and consistently rejected arguments similar to those raised by counsel, we need not address all of counsel's related arguments individually.

*Harris,* 233 Fed.Appx. at 586–87. The Court of Appeals also rejected counsel's argument that dismissal of the special findings limited the relevant conduct that could be attributed to Harris. *Id.* at 587.

### Harris Would Have Taken the Original Plea Offer

Harris's counsel fundamentally misunderstood the applicable Supreme Court and lower court precedent regarding *Booker* as well as the relevant guidelines. Neither the probation officer nor this court could convince counsel of the flaws in his interpretation of the law. It is highly unlikely, therefore, that Harris would have received or gleaned a clear understanding of her potential sentencing exposure in the indictment based on her advice from counsel. When the government offered her a plea agreement to 100 grams of cocaine base, it was understandable, given the incorrect advice Harris received, that she would have believed she could receive a substantially lesser sentence by getting the special findings dismissed and pleading straight up to the distribution counts. In fact, that is what she attempted to do. Unfortunately, her decision was not based on an accurate understanding of *Booker* or the guidelines. If she had received accurate advice, this court is convinced by a reasonable probability that she would have accepted the initial plea offer and received a sentence based on 100 grams of cocaine base instead of 150 grams, and she would have received a lesser sentence than the 151 months she received. At the subsequent plea proceeding, the court did not clarify that the guidelines applied to her case, as required by Rule 11, and Harris's and her lawyer's misunderstanding carried through to the end of her direct appeal.

### APPLICABLE LAW

 Harris did not challenge the plea process on direct appeal. She may, however, obtain review of her claim based on the ineffective assistance of her counsel and resulting prejudice to her. *Cf. Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (ineffec-

tive assistance of counsel standard). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* If a defendant fails to establish prejudice, the court need not consider whether counsel's actions were reasonable. *Id.* at 697, 104 S.Ct. 2052.

■■■ *Strickland* applies to ineffective assistance claims arising out of the plea bargaining process. *See Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *see also United States v. Regenos,* 405 F.3d 691, 693 (8th Cir.2005) (citing *Hill* ); *Wanatee v. Ault,* 259 F.3d 700, 703 (8th Cir.2001) (same). Thus, a defendant may establish prejudice by demonstrating "that he would have accepted the plea but for counsel's [professionally deficient] advice, and that had he done so he would have received a lesser sentence." *Wanatee,* 259 F.3d at 703–04. The court concludes that Harris's counsel provided her professionally deficient advice regarding the role of "relevant conduct" in determining her exposure to criminal penalties. Counsel provided Harris with professionally deficient advice regarding the offer to plead guilty to 100 grams of cocaine base, and but for counsel's advice, Harris would have accept the offer. The court further concludes that the subsequent plea proceeding was not adequate to preclude a finding of prejudice because the plea proceeding did not clarify the fundamental misunderstanding counsel gave Harris about the court's ability to sentence within the statutory penalty range. Consequently, Harris is entitled to relief on her § 2255 motion. Because the court grants Harris relief on the issue related to counsel's advice regarding the plea, the court need not address Harris's other grounds for relief.

**Counsel's Performance Was Deficient**

■■■ The court first addresses counsel's performance. The correct guidelines range, post-*Booker,* "remains the critical starting point for the imposition of a [defendant's] sentence." *United States v. Mashek,* 406 F.3d 1012, 1016 & n. 4 (8th Cir.2005). A defendant's role in the offense is measured by "relevant conduct" under § 1B1.3. *United States v. Thurmon,* 278 F.3d 790, 792 (8th Cir.2002). "Relevant conduct" has been called the "cornerstone" of the guidelines, and it is also the crux of this § 2255 proceeding. *See United States v. Galloway,* 976 F.2d 414, 415 (8th Cir.1992) (en banc) (including uncharged offenses as relevant conduct under the guidelines is authorized by statute and permitted by the Constitution), *cert. denied,* 507 U.S. 974, 113 S.Ct. 1420, 122 L.Ed.2d 790 (1993). "Relevant conduct" includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant," and in a case like Harris's, that requires grouping of multiple counts, relevant conduct includes "all acts and omissions [previously described] that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. §§ 1B1.3(a)(1)(A), 1B1.3(a)(2). In determining the offense conduct for which a defendant is responsible, uncharged conduct can be considered as relevant conduct. *Galloway,* 976 F.2d at 419; *see also United States v. Radtke,* 415 F.3d 826, 841 (8th Cir.2005).

Harris's counsel, however, was working under the mistaken impression, based on his erroneous understanding of the Supreme Court's decision in *Booker,* Eighth Circuit precedent, and the guidelines, that § 1B1.3 did not apply to her and a jury needed to find beyond a reasonable doubt the amount of drugs attributable to her except for those amounts in the transactions specifically charged in the indictment. The state of the law was well-known when Harris received her offer.

When Harris received the offer to plead guilty to 100 grams of cocaine base and 120 months in prison, she was facing an indictment that alleged four distinct drug transactions totaling about 7.5 grams of cocaine base and special findings in the indictment that she was responsible for 500 grams but less than 1.5 kilograms of cocaine base. Based on existing, well-known law, she could be held responsible for all acts that the government could prove by a preponderance of the evidence were part of the same course of conduct or common scheme or plan as her charges for distribution on the four separate dates. U.S.S.G. §§ 1B1.3, 3D1.1(a). According to Harris's counsel, however, when she received the plea offer, Harris's options[5] were:

- About 7.5 grams: Offense level 26, 70–87 months
- 100 grams: Base offense level 32, total level 31, taking into account adjustments for acceptance of responsibility, 120 months in prison
- At least 500 grams: Base offense level 36, plus other potential adjustments for role in the offense, at least 210–262 months

Based on that advice, Harris unsurprisingly decided she was better off going to trial and being found guilty on only the four charges. It was unreasonable, however, for counsel to suggest that Harris could be held responsible for only about 7.5 grams of cocaine base, even if she were acquitted at trial of the special findings. The court recognizes that counsel cannot be expected to predict the eventual sentence that a defendant will receive. Counsel should be expected, however, to advise a defendant on at least the fundamental provisions of the guidelines so that she can make an intelligent decision whether to accept or reject a plea. Given the critical impor-

tance of the guidelines in determining a sentence, and § 1B1.3 in particular, counsel's failure to advise Harris of the impact of § 1B1.1 on her sentence was professionally deficient.

**There Is a Reasonable Probability that the Outcome of the Plea Negotiation Process Would Have Been Different but for Counsel's Deficient Performance**

Counsel's failure to advise Harris on the nature of "relevant conduct" and its role in determining the offense level caused her to forego the offer to plead to 100 grams of cocaine base. Based on Harris's statements during the § 2255 hearing, the court is convinced that she would have taken the agreement if she had been properly advised. The court bases its conclusion not just on Harris's testimony, but also on "credible, non-conclusory evidence" that she would have taken the plea if she had been properly advised. *Cf. Engelen v. United States*, 68 F.3d 238, 241 (8th Cir. 1995) (holding § 2255 movant failed to present sufficient evidence that he would have taken the plea instead of going to trial). Harris was willing to admit her guilt, but she was mistaken as to rudimentary application of the guidelines to her case because of counsel's advice. Counsel's misunderstanding was evident at the plea proceeding, when he moved to strike the special findings as soon as Harris pled guilty. When the prosecutor tried to create a factual basis for the plea, Harris's counsel objected as irrelevant to statements not directly connected to the four distribution counts. Counsel again objected to amounts in the presentence report that were not tied directly to the distribution charges. Perhaps most revealing were counsel's statements at the sentencing, in

---

**5.** The offense level for cocaine base has subsequently been amended. *Harris,* No. 3:04–cr–

00021–RP, Clerk's No. 87 (Oct. 1, 2008) (reducing sentence).

which he stated § 1B1.3 did not apply and, even after instruction from the court, he persisted in arguing an erroneous interpretation of the law. He persisted in his view on appeal.

If Harris had agreed to plead to 100 grams of cocaine base, she would have received a sentence of 120 months in prison. Under the guidelines, she would have had a base offense level 32, and after taking into account the same adjustments to her offense level that the court eventually applied, and her criminal history, she would have had a total offense level 31 and a sentencing range of 121–151 months. Instead, she received a sentencing range of 151–188 months, and she was sentenced to 151 months in prison.

### Effect of the Plea Proceeding

■ The government argues that Harris was not prejudiced because she entered a voluntary plea to the charges. The court disagrees. The Court of Appeals has held that a lawyer's misunderstanding as to the potential length of sentencing is insufficient to render a plea involuntary so long as the court informed the defendant of the maximum possible sentence "and the court's ability to sentence within that range." *United States v. Quiroga,* 554 F.3d 1150, 1155 (8th Cir.2009). The court "is not required to inform a defendant of the applicable guideline range or the actual sentence he will receive." *Thomas v. United States,* 27 F.3d 321, 324 (8th Cir. 1994) (citations and quotations omitted).

Here, Harris was advised as to the maximum possible sentence. The problem is she was not clearly advised as to the court's ability to sentence within the range, as required in *Quiroga.* Likewise, Harris was not advised, as required by Federal Rule of Criminal Procedure 11, "that the court is required to consider any applicable sentencing guidelines but may depart from those guidelines under some circumstances...." *See* Fed. R.Civ.P. 11(c)(1) (2005). The government acknowledged it would recommend a sentence at the bottom of the guidelines range, and Harris said no one had promised her what her sentence would be. (Plea Tr. 15–17.) Cases in which courts have found a defendant was adequately informed to plead guilty often involved a plea agreement, which the defendant had time to review, and the court advised the defendant that the sentencing guidelines would apply and, even if the sentence turned out to be greater than the defendant expected, the defendant would not be able to withdraw the guilty plea. *E.g., United States v. Gomez,* 326 F.3d 971, 973 (8th Cir.2003) (plea agreement indicated defendant could not withdraw plea if sentencing stipulations were not adopted); *United States v. Spears,* 235 F.3d 1150, 1152 (8th Cir.2001) (court unwilling to accept, without further explanation, defendant's statement that he was confused as to "who the trier of fact was" when defendant had a lawyer and said he understood his right to a jury trial); *United States v. Bond,* 135 F.3d 1247, 1248 (8th Cir.1998) (per curiam) (court complied with R. 11). This is not a case where a defendant simply underestimated the strength of the government's case or miscalculated her criminal history or role in the offense. The court is unwilling to assume from the statements at the plea proceeding, made without a plea agreement, during a recess from the first day of trial and during an incomplete plea colloquy, that Harris understood the role that the court's factfinding and the sentencing guidelines would play in her sentence. Counsel's misadvice regarding relevant conduct and the plea offer is sufficient to create a reasonable probability that but for counsel's misadvice, Harris would have taken the plea and is sufficient to undermine confidence in the outcome of the plea negotiations. But for counsel falling below an objective

standard of reasonableness, Harris would have taken the plea offer, and the subsequent plea was not intelligently made. Therefore, she establishes cause and prejudice.

### REMEDY

██ Having determined that Harris is entitled to relief, the court now considers what remedy is appropriate. The court has "broad and flexible power in correcting invalid convictions and sentences." *Gardiner v. United States,* 114 F.3d 734, 736 (8th Cir.1997).[6] An appropriate remedy in this case is to allow Harris to reconsider and accept the offer to plead to 100 grams of cocaine base. *Cf. United States v. Harrison,* 113 F.3d 135, 137 (8th Cir.1997) ("A remedy that seems appropriate is to put § 2255 defendants in the same position as defendants on direct appeal by permitting resentencing, [ ] and to impose a sentence that would have been rendered but for the challenged error") (citations omitted). The court further concludes that, upon resentencing, the court must treat the guidelines as advisory and determine a sentence in accordance with the guidelines and 18 U.S.C. § 3553(a). *See Hernandez,* 450 F.Supp.2d at 983.

### SUMMARY AND RULING

The court **grants** Crystal Antoinette Harris's motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255. The court **vacates** Harris's judgment and will set a date for further proceedings in the criminal case by separate order.

IT IS SO ORDERED.

---

**6.** The court in *United States v. Hernandez,* 450 F.Supp.2d 950, 979 (N.D.Iowa 2006), provided a persuasive analysis for determining a post-*Booker* remedy in a § 2255 case, and this court adopts it.